576 S.E.2d 246

STATE of West Virginia ex rel. James E. LOVEJOY, Kevin G. Lovejoy, John D. Lovejoy, Ronald D. Lovejoy, Denese E. Lovejoy, Barbara Myers, Carolyn Brewster, Ronald Lovejoy, II, and Ronald G. Lovejoy, Petitioners,

v.

Michael O. CALLAGHAN, Secretary, West Virginia Department of Environmental Protection, the Oil and Gas Conservation Commission, and James Martin, Chief, Office of Oil & Gas, West Virginia Department of Environmental Protection, Respondents.

Columbia Natural Resources, Inc., Intervenor.

No. 30670.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 2002.

Decided Oct. 31, 2002.

Concurring Opinion of Justice Albright Nov. 1, 2002.

Dissenting Opinion of Justice McGraw Jan. 6, 2003.

John W. Barrett, Appalachian Center for the Economy and the Environment, Charleston, West Virginia and Joe Lovett, Mountain State Justice, Inc., Lewisburg, West Virginia, Attorneys for the Petitioners.

Perry D. McDaniel, Jennifer Akers, Charleston, West Virginia, Attorneys for the Respondents, Michael Callaghan, Secretary, James Martin, Chief, Office of Oil & Gas, and

West Virginia Department of Environmental Protection.

Darrell V. McGraw, Jr., Attorney General, Barbara F. Elkins, Shirley Skaggs, Assistant Attorneys General, Charleston, West Virginia, Attorneys for the Respondent, Oil and Gas Conservation Commission.

Tara D. Shumate Lee, Charleston, West Virginia and Thomas R. Goodwin, Carrie Goodwin Fenwick, Goodwin & Goodwin, LLP, Charleston, West Virginia, Attorneys for the Intervenor, Columbia Natural Resources, Inc.

George A. Patterson, III, Bowles Rice McDavid Graff & Love, PLLC, Charleston, West Virginia, Attorney for Amicus Curiae, The Independent Oil and Gas Association of West Virginia.

PER CURIAM:

Petitioners, who are individuals owning the surface rights in a tract of land situated in Lincoln County, West Virginia, seek a writ of mandamus to compel compliance by the governmental Respondents[1] charged with enforcing certain statutes which pertain to oil and gas well drilling permits. Specifically, Petitioners seek the revocation of a well permit that has already been issued and, in fact, released. As part of their request for relief, Petitioners seek to have an administrative rule that concerns the issuance of permits for deep wells declared invalid. Upon a full review of the issues presented, we determine that Petitioners have waived their rights of appeal relative to the permit issuance underlying this matter and further that Petitioners have failed to demonstrate their entitlement to a writ of mandamus. Accordingly, Petitioners' request for a writ of mandamus is hereby denied.

**I. Factual and Procedural Background**

On April 17, 2000, Columbia[2] applied to the West Virginia Department of Energy, Division of Oil and Gas (hereinafter referred to as "Office of Oil and Gas") to obtain a well work permit in connection with its plan to drill a deep test well,[3] which is referred to under the applicable statute as a "discovery deep well,"[4] on Petitioners' property. W.Va. Code § 22C-9-7(a)(1) (1998) (Repl.Vol.2002). Columbia only obtained permission from two of the surface owners. One of the non-consenting land owners, Denese Lovejoy,[5] contacted the Office of Oil and Gas to express her opposition to the issuance of a well permit. On May 5, 2000, the Office of Oil and Gas issued a well work permit to Columbia for the purpose of drilling a discovery deep well[6] on Petitioners' property. Petitioners took no timely action to have the permit issuance reviewed[7] or to stop the drilling process.

The discovery well at issue was drilled sometime between May 17, 2000, and August 23, 2000. After completing the drilling process, Columbia reclaimed the property.[8] On April 29, 2002, the Office of Oil and Gas

1. Respondent Michael Callaghan is the Secretary of the Department of Environmental Protection and Respondent James Martin is the Chief of the Office of Oil and Gas, the West Virginia Department of Environmental Protection.

2. Intervenor Columbia Natural Resources, Inc. ("Columbia") owns the rights to the minerals under the surface tract at issue.

3. A "test well" is defined as "a well intended to discover a 'new' pool." 39 W.Va.C.S.R. § 1-3.21.

4. *See* W.Va.Code § 22C-9-7 (1998) (Repl.Vol. 2002).

5. By letter dated May 1, 2000, Denese Lovejoy informed the Office of Oil and Gas regarding specific concerns she had relative to the drilling. By letter dated May 4, 2000, the Office of Oil and Gas responded to each of the concerns raised by Ms. Lovejoy.

6. While the parties refer to the well at issue as a "test" well, a term only used in the regulations, we prefer to use the term chosen by the Legislature—a discovery well. *Cf.* W.Va.Code § 22C-9-7; 39 W.Va.C.S.R. § 1-3.21. We recognize, however, that the terms both are in reference to the same type of well—a deep well expressly drilled for the purpose of locating a pool of oil or gas.

7. *See* W.Va.Code §§ 22-6-41 (1994) (Repl.Vol. 2002); 29A-5-4 (1998).

8. Columbia represents that the costs of drilling, completing, and reclaiming the well site to date are approximately 2.6 million dollars. The discovery well drilling was apparently successful, as Petitioners relate that the well is now a production well.

issued a release of the well work permit at issue after a final inspection to assure that Columbia had met all of its regulatory obligations to reclaim Petitioners' property in connection with the resulting disturbance occasioned by the well drilling.

On May 2, 2002, Petitioners filed a civil action in the Circuit Court of Lincoln County, West Virginia, against Columbia and the contracting company employed by Columbia wherein they assert various statutory[9] and common law claims arising out of the drilling of the discovery well at issue. Petitioners filed their action with this Court on May 16, 2002, seeking, through an original proceeding in mandamus, revocation of the deep well work permit and declaration of the invalidity of an administrative rule[10] for failure to comply with the rule making provisions of the Administrative Procedures Act. *See* W.Va. Code §§ 29A–3–1 to –18 (1988) (Repl.Vol. 1998 & Supp.2002).

This Court issued a rule to show cause on June 25, 2002, and ordered the West Virginia Oil and Gas Commission ("Commission") to participate in the proceeding due to its drafting of the administrative rule, the validity of which is challenged by Petitioners.[11] The Independent Oil and Gas Association of West Virginia was granted permission to participate in this original proceeding as an *amicus curiae.*

## II. Standard of Review

█ Our three-prong standard for the issuance of a writ of mandamus is well-ensconced in the law:

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). We proceed to determine whether Petitioners can meet this standard.

## III. Discussion

Given the extraordinary relief nature of this proceeding, Petitioners are required to demonstrate a clear right to the relief sought; a legal duty on the part of the respondent to perform the act at issue; and the absence of an available and adequate remedy. *See Kucera,* 153 W.Va. at 539, 170 S.E.2d at 367, syl. pt. 2. We further recognized in *Kucera* that "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." *Id.* at syl. pt. 1, 170 S.E.2d 367.

At the center of the relief sought by Petitioners is a statutory provision located in the article of the West Virginia Code addressing Oil and Gas Conservation. *See* W.Va.Code §§ 22C–9–1 to –16 (1994) (Repl.Vol.2002). This provision, known as the "consent and easement" provision, provides that:

No drilling or operation of a deep well for the production of oil or gas shall be permitted upon or within any tract of land unless the operator shall have first obtained the written consent and easement therefor, duly acknowledged and placed on record in the office of the county clerk, for valuable consideration of all owners of the surface of such tract of land, which consent shall describe with reasonable certainty, the location upon such tract, of the location of such proposed deep well, a certified copy of which consent and easement shall be submitted by the operator to the commission.

W.Va.Code § 22C–9–7(b)(4). We identify the "consent and easement" provision as necessary background to this matter and its correlation to the administrative rule which Petitioners challenge,[12] preferring to leave

---

**9.** Petitioners seek damages under the Oil and Gas Production Damage Compensation Act. *See* W.Va.Code §§ 22–7–1 to –8 (1994) (Repl.Vol. 2002).

**10.** *See* 39 W.Va.C.S.R. § 1–4.4(a).

**11.** *See supra* note 10.

**12.** The administrative rule states that "[f]or all wells other than test wells, [operators shall obtain] a certificate of consent and easement from all owners of the surface of the tract on which the deep well is to be drilled." 39 W.Va.C.S.R. § 1–4.4(a).

for another day a full discussion of this provision and its application.

## A. Permit Revocation

■ Before we address the issue of the rule challenge, however, we discuss the central issue in this extraordinary relief proceeding—the revocation of the working well permit. We note initially that there is no procedure, codified or otherwise, that addresses the permit revocation sought by Petitioners.[13] Most important, however, to the resolution of this matter is Petitioners' complete failure to avail themselves of the remedies supplied by law in connection with the issuance of the well permit. The provisions of West Virginia Code § 22–6–41 provide that:

> Any party to the proceedings under section sixteen [§ 22–6–16] of this article adversely affected by the order of issuance of a drilling permit or to the issuance of a fracturing permit or the refusal of the director to grant a drilling permit or fracturing permit is entitled to judicial review thereof. All of the pertinent provisions of section four [§ 29A–5–4], article five, chapter twenty-nine-a of this code shall apply to and govern such judicial review with like effect as if the provisions of section four were set forth in extenso in this section.
>
> The judgment of the circuit court shall be final unless reversed, vacated or modified on appeal to the supreme court of appeals in accordance with the provisions of section one [§ 29A–6–1], article six, chapter twenty-nine-a of this code.

Pursuant to the authority provided by West Virginia Code § 22–6–41, which grants an administrative right of appeal in connection with the issuance of drilling permits, Petitioners had a clear right to appeal the

decision to issue the working well permit.[14] Under the provisions of the Administrative Procedures Act, this appeal was required to be filed within thirty days of the issuance of the agency's decision to issue the well permit. *See* W.Va.Code § 29A–5–4. No such appeal was taken by Petitioners. Not until more than two years later did Petitioners take any action relative to the issuance of the drilling permit.

■ In failing to take a direct appeal from the issuance of the drilling permit, Petitioners have violated a basic tenet of administrative law.

> "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Pt. 1, syllabus, *Daurelle v. Traders Fed. Savings & Loan Association of Parkersburg*, 143 W.Va. 674, [104 S.E.2d 320 (1958)].

Syl. Pt. 2, *Bank of Wheeling v. Morris Plan Bank & Trust Co.*, 155 W.Va. 245, 245–46, 183 S.E.2d 692, 693 (1971). The complete failure of Petitioners to utilize the rights of appeal set forth in West Virginia Code § 22–6–41 and § 29A–5–4 is fatal to this case. Petitioners simply sat on their rights of appeal and in so doing, have waived their right to challenge the issuance of the working well permit.

## B. Administrative Rule Challenge

Petitioners contend that the administrative rule implemented by the Commission, which exempts discovery or test wells from the "consent and easement" provision, is a legislative rule. *See supra* note 12. Due to the lack of legislative approval, Petitioners argue

---

**13.** Respondents argue that because there is no procedure for permit revocation, there consequently is no clear right to enforce a permit revocation through the mechanism of mandamus. Furthermore, they cite case law in support of the position that Columbia would have grounds for filing a writ of mandamus based on their acts of reliance on the issued working well permit were we to issue a writ of mandamus against them. *See Drury Displays, Inc. v. Brown*, 306 Ill.App.3d 1160, 240 Ill.Dec. 173, 715 N.E.2d 1230 (1999) (granting mandamus to direct reissuance of permit issued to billboard owner and then revoked based on owner's change of position and reliance following initial issuance of permit).

**14.** Petitioners were notified by letter dated May 5, 2000, regarding the decision to issue the working well permit. They met with the inspector on May 22, 2000, to discuss the decision to issue the permit.

that the administrative rule is consequently invalid and unenforceable. *See generally Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 583, 466 S.E.2d 424, 434 (1995) (discussing three classifications of agency rules: legislative, interpretative, and procedural); W.Va.Code § 29A–1–2 (1982) (Repl.Vol.1998) (defining three types of agency rules).

Having determined that Petitioners have failed to comply with the administrative procedures set in place for challenging the issuance of a well permit, we find it unnecessary to address the issue of whether the rule complained of is invalid for non-compliance with the rule-making procedures set forth by law. *See* W.Va.Code §§ 29A–3–1 to–18.

We conclude that Petitioners have failed to demonstrate the elements necessary to issuance of a writ of mandamus.[15] Accordingly, we deny Petitioners' request for the issuance of a writ of mandamus.

Writ denied.

ALBRIGHT, Justice, concurring:

(Filed Nov. 1, 2002)

While I concur in the decision of the majority, I wish to write separately to express certain observations concerning the classification of the administrative rule that was challenged by the Petitioners as invalid (39 W.Va.C.S.R. § 1–4.4(a)), and the various considerations underlying the legislative enactments, which address the issue of oil and gas conservation, that are set forth in article 9, chapter 22C of our state code. *See* W.Va. Code §§ 22C–9–1 to –16 (1994) (Repl.Vol. 2002).

Although the majority found it unnecessary to characterize the administrative rule applied by the Oil and Gas Commission in its decision to issue the working well permit, I wish to briefly address the nature of the rule.[1] Despite the efforts of the various

Respondents and the amicus curiae to describe the rule as procedural, it is clear that the rule qualifies as a legislative rule under both statutory definitions and case law applying those definitions.

**Administrative Rule Characterization**

The Legislature has defined a "legislative rule" as follows:

"Legislative rule" means every rule, as defined in subsection (i) of this section, proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule. Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect until promulgated by specific authorization of the legislature. Except where otherwise specifically provided in this code, legislative rule does not include (A) findings or determinations of fact made or reported by an agency, including any such findings and determinations as are required to be made by any agency as a condition precedent to proposal of a rule to the legislature; (B) declaratory rulings issued by an agency pursuant to the provisions of section one [§ 29A–4–1], article four of this chapter; (C) orders, as defined in subdivision (e) of this section; or (D) executive orders or proclamations by the governor issued solely in the exercise of executive power, including executive orders issued in the event of a public disaster or emergency;

W.Va.Code § 29A–1–2(d) (1982) (Repl.Vol. 1998).

15. We note, however, that Petitioners are not without the availability of a remedy, as they have pending an action in the Circuit Court of Lincoln County through which they seek compensation under the Oil and Gas Production Damage Compensation Act, as well as various common law remedies in connection with Columbia's use of their land, which may provide Petitioners anoth-

er remedy for their alleged injuries. *See* W.Va. Code §§ 22–7–1 to –8 (1994) (Repl.Vol.2002).

1. According to the parties, the rule at issue has been submitted to the Legislature for consideration during the 2003 legislative session.

In contrast, a "procedural rule" is defined as a rule "which fixes rules of procedure, practice or evidence for dealings with or proceedings before an agency, including forms prescribed by the agency." W.Va. Code § 29A–1–2(g). While I can appreciate the efforts of counsel to find a way to keep the rule from being declared invalid for lack of legislative approval, the rule at issue is clearly beyond the definitional parameters of a "procedural rule." Rather than being a rule limited in effect to addressing procedural niceties, the rule at issue clearly rises to the level of a "legislative rule," which must proceed through the legislative rule making process prior to promulgation. *See* W.Va.Code § 29A–3–12 (1996) (Repl.Vol.1998).

By definition, "legislative rules" are those rules which, "when effective, ... [are] determinative on any issue affecting private rights, privileges or interests." W.Va.Code § 29A–1–2(d). It is simply beyond dispute that the rule at issue, which arguably involves circumvention of the "consent and easement" provision found in West Virginia Code § 22C–9–7(b)(4), affects the private rights of those people whose consent is not required under the rule when a discovery well is drilled. *See also Chico Dairy Co. v. Human Rights Comm'n,* 181 W.Va. 238, 244, 382 S.E.2d 75, 81 (1989) (finding that administrative rule defining handicapped person for purposes of the W.Va. Human Rights Act was "legislative" in nature as "the rule confers a right not provided by law; and the rule affects private rights and purports to regulate private conduct"). Moreover, the Legislature specifically anticipated and provided for the proposal of rules in accordance with the Administrative Procedures Act "to implement and make effective the provisions of this article [W.Va.Code § 22C–9–1 *et seq.*]." W.Va.Code § 22C–9–5. The rule at issue was clearly formulated for the purpose of implementing the "consent and easement" provision of West Virginia Code § 22C–9–7, and consequently it necessarily qualifies as a "legislative rule"—a rule which requires legislative approval before the rule can have the

force and effect of law. *See State ex rel. Kincaid v. Parsons,* 191 W.Va. 608, 610, 447 S.E.2d 543, 545 (1994) (viewing express legislative authorization of rule promulgating authority as indicative of legislative characterization of regional jail's rule banning tobacco use).

### Tradeoffs Underlying Act

In trying to convince this Court to declare the administrative rule invalid, the *amicus curiae* suggested that the "consent and easement" provision is itself unconstitutional.[2] This issue was not fully briefed; I reference this contention only as a vehicle for discussion of the panoply of considerations underlying and inherent to the enactment of the Oil and Gas Conservation statutes. *See* W.Va. Code § 22C–9–1 to –16 (1994) (Repl.Vol. 2002).

The Legislature was clear in its enactment of article nine, chapter 22C regarding its mutual concerns of economic development and conservation of resources:

> (a) It is hereby declared to be the public policy of this state and in the public interest to:
>
> (1) Foster, encourage and promote exploration for and development, production, utilization and conservation of oil and gas resources;
>
> (2) Prohibit waste of oil and gas resources and unnecessary surface loss of oil and gas and their constituents;
>
> (3) Encourage the maximum recovery of oil and gas; and
>
> (4) Safeguard, protect and enforce the correlative rights of operators and royalty owners in a pool of oil or gas to the end that each such operator and royalty owner may obtain his just and equitable share of production from such pool of oil or gas.

W.Va.Code § 22C–9–1(a).

As might be expected, the provisions of the Oil and Gas Conservation Act reveal a clear balancing of interests among the various entities affected by the enactment. Whereas

---

**2.** The Independent Oil and Gas Association of West Virginia suggests that the "consent and easement" provision found in West Virginia Code § 22C–9–7(b)(4) is constitutionally infirm on two grounds: (1) impairment of contract; and (2) deprivation of property without due process of law.

the Act seeks to prohibit a surface owner from preventing operation of a mineral owner's right to search for oil and gas via a discovery or test well,[3] the Legislature has, at the same time, devised a method of assuring that people who previously went unpaid for mineral extraction under the law of capture now will receive payment pursuant to a formula that contemplates pooling of the rights of those holding mineral rights to contiguous properties and a sharing of the costs of extraction and the royalties resulting from the production of oil and gas from deep wells.

While either the surface owner or the mineral rights owner might make an argument that the Act seeks to impair their individual rights, the Legislature had before it the difficult task of achieving a balance of both sets of rights. In clear recognition of the public interest to be advanced by developing a system that would seek to "encourage the maximum recovery of oil and gas from all productive formations in this state," the Legislature appears to have located a middle ground which serves to both benefit production interests and the interests of those people who might otherwise not have been justly compensated for such mineral extraction. W.Va. Code § 22C–9–1(b).

The enactment of the Oil and Gas Damage Compensation Act in 1983[4] further evidences the various considerations and tradeoffs that were made in conjunction with these statutes. In full recognition of the fact that "the public interest requires that the surface owner be entitled to fair compensation for the loss of the use of surface area during the rotary drilling operation," the Legislature established a statutory cause of action for surface owners to recover for loss of use[5] resulting from drilling operations while expressly preserving certain common law rights of action. W.Va.Code §§ 22–7–1(a)(2); 22–7–3; 22–7–4 (1994) (Repl.Vol.2002). The creation of this statutory cause of action evidences a specific legislative awareness of the burdens imposed on the surface owner and provides an express remedy to address those unique burdens.

As with all legislation that involves advancing the economic interests of the state, burdens are borne by numerous entities. Thus, to look at just one particular entity's interest, without considering the broad panoply of affected interests, is to deny recognition of the vast considerations and tradeoffs underlying these legislative enactments. When viewed with a perspective that takes into account the combined interests of all the entities involved—the interests of both surface owners and mineral rights owners, as well as the public interest that is necessarily served through such economic endeavors—the interests of all the affected entities, on balance, appear to be properly accounted for and addressed.

In light of these considerations, I submit respectfully that a convincing case can be made for holding the "consent and easement" provision applicable only to wells drilled within a pool *after* a test or discovery well has been drilled and thereby exempting the drilling of a test or discovery deep well from the "consent and easement" provision. *See* W.Va.Code § 22C–9–7(b)(4). Moreover, I

---

**3.** While the Act speaks in terms of a "discovery" well, the regulations also refer to a "test well." *See* W.Va.Code § 22C–9–7(a)(1); 39 W.Va.C.S.R. § 1–3.21. A "test well" is defined as "a well intended to discover a 'new' pool." *Id.*

**4.** 1983 W.Va. Acts, ch. 69.

**5.** The statutory cause of action sets forth a host of factors that are to be considered in calculating the compensation owed to the surface owner:

(1) Lost income or expenses incurred as a result of being unable to dedicate land actually occupied by the driller's operation or to which access is prevented by such drilling operation to the uses to which it was dedicated prior to commencement of the activity for which a permit was obtained measured from the date the operator enters upon the land until the date reclamation is completed, (2) the market value of crops destroyed, damaged or prevented from reaching market, (3) any damage to a water supply in use prior to the commencement of the permitted activity, (4) the cost of repair of personal property up to the value of replacement by personal property of like age, wear and quality, and (5) the diminution in value, if any, of the surface lands and other property after completion of the surface disturbance done pursuant to the activity for which the permit was issued determined according to the actual use made thereof by the surface owner immediately prior to the commencement of the permitted activity.
W.Va.Code § 22–7–3(a)(1).

**8**

further submit that the overall legislative scheme concerning oil and gas conservation may be seen as constitutional notwithstanding the apparently dichotomous treatment of initial discovery or test wells and subsequent wells within an established pool.

McGRAW, Justice, dissenting:

(Filed Jan. 6, 2003)

By creating the "consent and easement" provision contained in W. Va.Code 22C–9–7(b)(4) our Legislature evidenced a desire to protect the rights of surface owners and to limit the ability of operators to drill or operate "deep well[s] for the production of oil or gas." As Justice Albright suggests in his concurring opinion, this legislation reflects a complex balancing of competing interests. The opinion quotes in footnote 12 an administrative rule that makes this consent and easement provision inapplicable to so-called "test wells." *See,* W. Va.C.S.R. 1–4.4(a).

What concerns me is the apparent ability of an oil or gas operator to ignore the "consent and easement" provision by simply declaring any deep well it wants to drill to be a "test well" and thus free itself from the legislatively created obligation to get the written consent of the surface owner. As the majority opinion notes in footnote 8, the well in question is apparently now a production well. The Legislature has declared that operators must obtain the consent of surface owners to drill or operate a deep production well. If oil and gas operators can get a permit for a "test well" without the consent of the surface owner and then convert that "test well" into a production well, it seems that the Legislature's will has been ignored.

Therefore, I respectfully dissent.