737 S.E.2d 80

James MARTIN, in his Official Capacity as Director, Office of Oil and Gas, West Virginia Department of Environmental Protection; Office of Oil and Gas, West Virginia Department of Environmental Protection; and EQT Production Company, Petitioners

v.

Matthew L. HAMBLET, Respondent

West Virginia Surface Owners' Rights Organization, Intervenor.

No. 11–1157.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 21, 2012.

Joseph L. Jenkins, Esq., Senior Counsel, Paul R. Pichardo, Esq., Associate Counsel, Office of Legal Services, West Virginia Department of Environmental Protection, Charleston, WV, for James Martin and Office of Oil and Gas, West Virginia Department of Environmental Protection.

Richard L. Gottlieb, Esq., Valerie H. Raupp, Esq., Lewis Glasser Casey & Rollins, PLLC, Charleston, WV, for EQT Production Company.

Cynthia J.T. Loomis, Esq., West Union, WV, and Isak J. Howell, Esq., Lewisburg, WV, for Matthew L. Hamblet.

David McMahon, Esq., Charleston, WV, for Intervenor, West Virginia Surface Owners' Rights Organization.

Thomas J. Hurney, Jr., Esq., Kenneth E. Tawney, Esq., Jackson Kelly PLLC, Charleston, WV, for Amicus Curiae, West Virginia Oil and Natural Gas Association.

George A. Patterson, III, Esq., H. Hampton Rose, IV, Esq., Bowles Rice McDavid Graff & Love, LLP, Charleston, WV, for Amicus Curiae, Independent Oil and Gas Association of West Virginia.

WORKMAN, Justice:

The Circuit Court of Doddridge County, West Virginia, has certified the following question to this Court:

> Does the West Virginia Supreme Court of Appeal's [sic] opinion in *State ex rel. Lovejoy v. Callaghan*, 576 S.E.2d 246, 213 W.Va. 1 (2002) interpret the relevant statutes, when read *in para materia*, to permit a surface owner to seek judicial review of the West Virginia Department of Environmental Protection, Office of Oil and Gas's issuance of a well work permit for a horizontal Marcellus well?

Upon consideration and review of *Lovejoy* and the relevant statutes, this Court answers the certified question in the negative.

## I. FACTS

EQT Production Company (hereinafter "EQT"), one of the petitioners herein, is the lessee of a valid oil and gas lease executed in 1905 that encompasses 2,654 acres of mineral estate located in Doddridge County, West Virginia. The respondent herein, Matthew L. Hamblet, is the surface owner of a 442.6–acre parcel of property that is included within EQT's leasehold. On March 22, 2010, EQT filed a permit application with the Office of Oil and Gas of the West Virginia Department of Environmental Protection (hereinafter "DEP"), also a petitioner herein,[1] for its "513136 Lewis Maxwell well" (hereinafter "the EQT well"), a shallow well targeting the Marcellus formation with a "horizontal leg into the Marcellus." As part of the permit application, EQT certified that the surface owners, including Mr. Hamblet, were sent notice of the application.

On April 7, 2010, Mr. Hamblet, by counsel, submitted surface owner comments to the DEP regarding the EQT well at issue. At least four other wells had already been permitted on Mr. Hamblet's property. According to Mr. Hamblet, the resulting damage and disturbance to his property was substantial. Mr. Hamblet's comments, therefore, concerned the damage to his property and his belief that the erosion and sediment control plan was inadequate. He also commented that the proximity of drilling waste surface water presented a failure to protect fresh water resources. He further noted EQT's previous failed attempts at revegetation and irresponsible handling of timber on his property.

On April 14, 2010, counsel for EQT submitted additional information in response to Mr. Hamblet's comments. Thereafter, the DEP conducted an inspection of the site to ensure compliance with all applicable permitting requirements. On April 22, 2010, the DEP issued the permit requested by EQT, finding that all the application requirements were satisfied.

Subsequently, on May 21, 2010, Mr. Hamblet filed a "Petition for Appeal of Issuance of a Well Permit" in the Circuit Court of Doddridge County. On June 14, 2010, the DEP filed a motion to dismiss the petition contending that Mr. Hamblet did not have the right to appeal the issuance of the permit under any relevant statutory authority. EQT filed its motion to dismiss on October 26, 2010, and also joined in the motion filed by the DEP. The circuit court then held two hearing on the motions. The court denied the motions by order entered July 5, 2011, based on this Court's decision in *State ex rel. Lovejoy v. Callaghan*, 213 W.Va. 1, 576 S.E.2d 246 (2002), concluding that Mr. Hamblet has the right to appeal the permit, but granted the request of the DEP and EQT to submit its ruling to this Court via certified question. The order of certification was entered on August 10, 2011.

## II. STANDARD OF REVIEW

■ This Court has held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). With this standard in mind, the parties' arguments will be considered.[2]

## III. DISCUSSION

■ In order to answer the certified question presented, our statutory law pertaining to the issuance of well work permits must be applied and interpreted, as necessary, along with the decision in *Lovejoy*. Accordingly, our analysis begins with some basic rules of statutory construction. "The

1. James Martin, in his official capacity as Director of the Office Oil and Gas of the West Virginia Department of Environmental Protection, is also a petitioner in this case.

2. By order dated November 22, 2011, this Court granted a motion filed by the West Virginia Surface Owners' Rights Organization (hereinafter "WVSORO") seeking to intervene as a party respondent in this matter. Thereafter, WVSORO filed a brief supporting Mr. Hamblet. It is also noted at this juncture that briefs were filed by amici curiae, the West Virginia Oil and Natural Gas Association and the Independent Oil and Gas Association of West Virginia; these associations support the position of the DEP and EQT. This Court appreciates the contributions made by the intervenor and amici curiae.

primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syllabus Point 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). "A statutory provision which is clear and un-ambiguous and plainly expresses the legisla-tive intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). In other words, "[w]here the language of a statutory provi-sion is plain, its terms should be applied as written and not construed." *DeVane v. Ken-nedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999). *Accord* Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Also, "[i]n the interpretation of statutory provi-sions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, ap-plies." Syllabus Point 3, *Manchin v. Dun-fee*, 174 W.Va. 532, 327 S.E.2d 710 (1984). Finally, it is important to note that "[s]tat-utes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Sylla-bus Point 3, *Smith v. State Workmen's Com-pensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord* Syllabus Point 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given ef-fect.")

With the rules of statutory construction in mind, we now turn to the decision issued in *Lovejoy*. In that case, owners of the surface rights of a tract of land sought a writ of mandamus from this Court requiring the DEP to revoke a well permit that had al-ready been issued for the drilling of a deep discovery well. By the time the petition for writ of mandamus was filed, the permit had already been released as the drilling had been completed and the land reclaimed. The petitioners in *Lovejoy* were also seeking to have an administrative rule concerning the issuance of permits for deep wells declared invalid. In denying the writ of mandamus, this Court concluded that the petitioners had another adequate remedy—the right of ap-peal—and had failed to utilize that remedy. Specifically, this Court stated in *Lovejoy*:

> Pursuant to the authority provided by West Virginia Code § 22–6–41, which grants an administrative right of appeal in connection with the issuance of drilling permits, Petitioners had a clear right to appeal the decision to issue the working well permit. Under the provisions of the Administrative Procedures Act, this appeal was required to be filed within thirty days of the issuance of the agency's decision to issue the well permit. *See* W. Va.Code § 29A–5–4. No such appeal was taken by the Petitioners. Not until more than two years later did Petitioners take any action relative to the issuance of the drilling per-mit.

213 W.Va. at 4, 576 S.E.2d at 249 (footnote omitted). Based upon this language in *Love-joy*, Mr. Hamblet filed his appeal of the issuance of the well permit for the EQT well at issue in this case in the circuit court.

The DEP and EQT argued below and now in this Court that the relevant statutes gov-erning the issuance of well work permits do not extend the right of appeal to surface owners and, therefore, to the extent that *Lovejoy* indicated otherwise, it was a mis-statement of the law. The DEP and EQT assert that while surface owners receive no-tice of any well work permit application, they are only afforded the opportunity to "file comments with the [DEP] as to the location or construction of the applicant's proposed well work within fifteen days after the appli-cation is filed with the director" pursuant to W. Va.Code § 22–6–10 (1994) (Repl. Vol. 2009).[3] The DEP and EQT contend that no

---

3. W. Va.Code § 22–6–10 states:

(a) All persons described in subsections (a) and (b), section nine [§ 22–6–9(a) and (b)] of this article may file comments with the di-rector as to the location or construction of the applicant's proposed well work within fifteen

additional statute provides a mechanism for surface owners to object to a well work permit, request a hearing on a well work permit or seek judicial review thereof.

As set forth above, *Lovejoy* indicated that the surface owners in that case had an administrative right of appeal provided by W. Va.Code § 22–6–41 (1994) (Repl. Vol. 2009) that they had failed to utilize. W. Va.Code § 22–6–41 states:

> Any party to the proceedings under section sixteen [§ 22–6–16] of this article adversely affected by the order of issuance of a drilling permit or to the issuance of a fracturing permit or the refusal of the director to grant a drilling permit or fracturing permit is entitled to judicial review thereof. All of the pertinent provisions of section four [§ 29A–5–4], article five, chapter twenty-nine-a of this code shall apply to and govern such judicial review with like effect as if the provisions of section four were set forth in extenso in this section.
>
> The judgment of the circuit court shall be final unless reversed, vacated or modified on appeal to the supreme court of appeals in accordance with the provisions of section one [§ 29A–6–1], article six, chapter twenty-nine-a of this code.

Utilizing the rules of statutory construction, the plain language of this statute indicates that a right of judicial review of the issuance of or refusal to issue a drilling or fracturing permit is extended to "any party to the proceedings" under W. Va.Code § 22–6–16 (1994) (Repl. Vol. 2009). The relevant portion of W. Va.Code § 22–6–16 provides:

> days after the application is filed with the director.
>
> (b) Prior to the issuance of any permit for well work, the applicant shall certify to the director that the requirements of section nine [§ 22–6–9] of this article have been completed by the applicant. Such certification may be by affidavit of personal service or the return receipt card, or other postal receipt for certified mailing.

W. Va.Code § 22–6–9(a)(1) (1994) provides, in pertinent part:

> (a) No later than the filing date of the application, the applicant for a permit for any well work shall deliver by personal service or by certified mail, return receipt requested, copies of the application, well plat and erosion and sediment control plan required by section six

(a) When a well is proposed to be drilled or converted for the purposes provided for in section fourteen [§ 22–6–14] of this article, and is above a seam or seams of coal, then *the coal operator operating said coal seams beneath the tract of land, or the coal seam owner or lessee, if any,* if said owner or lessee is not yet operating said coal seams, may within fifteen days from the receipt by the director of the plat and notice required by section fourteen of this article, file objections in writing (forms for which will be furnished by the director on request) to such proposed drilling or conversion.

(Emphasis added). Again, applying the plain language of the statute, the parties to a proceeding under W. Va.Code § 22–6–16 are the coal seam owner, operator, or lessee.[4]

■ W. Va.Code § 22–6–16 is clear and unambiguous with regard to who may object to the well proposed to be drilled. Notably absent from the statute is any mention of the surface owner of the subject property. Therefore, in accordance with our rules of statutory construction, it must be concluded that the Legislature intended to deny surface owners the right of judicial review with respect to the issuance of a well work permit as provided in W. Va.Code § 22–6–41. As previously explained,

> "[I]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legis-

[§ 22–6–6] of this article to each of the following persons:

(1) The owners of record of the surface of the tract on which the well is, or is to be located[.]

---

4. The well operator is a party because the well operator must apply for the well work permit. *See* W. Va.Code § 22–6–6 (1994) (Repl. Vol. 2009) ("[i]t is unlawful for an person to commence any well work, including site preparation work which involves any disturbance of the land, without first securing from the director a well work permit"). While the focus here concerns who has the right to object to the issuance of a well work permit, we recognize that the well operator also has the right to judicial review in the event the permit is refused.

lature purposely omitted." *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (citing *Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994)). *See also, State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written.").

*Phillips v. Larry's Drive–In Pharmacy, Inc.,* 220 W.Va. 484, 491, 647 S.E.2d 920, 927 (2007). Accordingly, this Court now holds that the right of judicial review with regard to the issuance or refusal of a well work permit as provided by W. Va.Code § 22–6–41 does not extend to owners of the surface rights of the property upon which the proposed well is to be drilled. To the extent that *Lovejoy* indicates otherwise, it is overruled.

■ Despite our holding with respect to W. Va.Code § 22–6–41, our analysis does not end there. Mr. Hamblet filed his "Petition for Appeal of Issuance of Well Permit" based upon *Lovejoy* and W. Va.Code § 22–6–40 (1994) (Repl. Vol. 2009), as opposed to W. Va.Code § 22–6–41, presumably because the well at issue in this case is a horizontal Marcellus well as opposed to a deep discovery well which was at issue in *Lovejoy*. Accordingly, we continue our analysis to determine whether a surface owner may seek judicial review of the issuance of a well work permit for horizontal Marcellus well under W. Va.Code § 22–6–40.

■ West Virginia Code § 22–6–40 states, in its entirety as follows:

Any party to the proceeding under section fifteen [§ 22–6–15] of this article or section seven [§ 22C–8–7], article eight, chapter twenty-two-c of this code, adversely affected by the issuance of a drilling permit or to the issuance of a fracturing permit or the refusal of the director to grant a drilling permit or fracturing permit is entitled to judicial review thereof. All of the pertinent provisions of section four [§ 29A–5–4], article five, chapter twenty-nine-a of this code shall apply to and govern such judicial review with like effect as if the provisions of said section four were set forth in extenso in this section.

The judgment of the circuit court shall be final unless reversed, vacated or modified on appeal to the supreme court of appeals in accordance with the provisions of section one [§ 29A–6–1], article six, chapter twenty-nine-a of this code.

The plain language of this statute extends that the right of judicial review of the issuance of or refusal to issue a drilling or fracturing permit to any party to the proceeding under W. Va.Code § 22–6–15 or W. Va.Code § 22C–8–7. The relevant portion of W. Va. Code § 22–6–15 (1994) (Repl. Vol. 2009) states:

(a) When a proposed deep well drilling site or oil well drilling site or any site is above a seam or seams of coal, then the coal operator operating said coal seams beneath the tract of land, or *the coal seam owner or lessee, if any, if said owner or lessee is not yet operating said coal seams,* may within fifteen days from the receipt by the director of the plat and notice required by section twelve [§ 22–6–12] of this article, or within fifteen days from the receipt by the director of notice required by section thirteen of this article, file objections in writing (forms for which will be furnished by the director on request) to such proposed drilling or fracturing with the director, setting out therein as definitely as is reasonably possible the ground or grounds on which such objections are based.

(Emphasis added). W. Va.Code § 22C–8–7 provides, in pertinent part:

(a) At the time and place fixed by the chair for the meeting of the board and for consideration of the objections to proposed drilling filed by coal seam owners pursuant to section seventeen [§ 22–6–17], article six, chapter twenty-two of this code, the well operator and *the objecting coal seam owners* present or represented shall hold a conference with the board to consider the objections. Such persons present or represented at the conference may agree upon either the drilling location as proposed by

the well operator or an alternate location. Any change in the drilling location from the drilling location proposed by the well operator shall be indicated on the plat enclosed with the notice of objection filed with the chair by the director in accordance with the provisions of section seventeen, article six, chapter twenty-two of this code, and the distance and direction to the new drilling location from the proposed drilling location shall also be shown on such plat. If agreement is reached at the conference by the well operator and such objecting coal seam owners present or represented at the conference, the board shall issue a written order stating that an agreement has been reached, stating the nature of such agreement, and directing the director to grant the well operator a drilling permit for the location agreed upon. The original of such order shall be filed with the division within five days after the conference of the board at which the drilling location was agreed upon and copies thereof shall be mailed by registered or certified mail to the well operator and the objecting coal seam owners present or represented at such conference.

(Emphasis added). Both statutes clearly and unambiguously identify the parties to the proceeding as coal seam operators, owners or lessees.[5] Neither statute mentions the owner of the surface rights of the subject property. Accordingly, as with W. Va.Code § 22–6–41, it must be concluded, and we now so hold, that the right of judicial review with regard to the issuance or refusal of a well work permit as provided by W. Va.Code

§ 22–6–40 does not extend to owners of the surface rights of the property upon which the proposed well is to be drilled.

The DEP and EQT point out in their briefs that the EQT well, a horizontal Marcellus well, is a shallow well[6] and, thus, objections to a well work permit would ostensibly be filed pursuant to W. Va.Code § 22–6–17 (1994) (Repl. Vol. 2009). The relevant portion of W. Va.Code § 22–6–17 provides:

> When a proposed shallow well drilling site is above a seam or seams of coal, then *the owner of any such coal seam* may, within fifteen days from the receipt by the director of the plat and notice required by section twelve of this article, file objections in writing (forms for which will be furnished by the director on request) to such proposed drilling with the director, setting out therein as definitely as is reasonably possible the ground or grounds on which such objections are based.[7]

(Footnote added). As with W. Va.Code §§ 22–6–15 and 22–6–16, this statute only affords the right to object to coal seam owners. Surface owners may only file comments as to the location or construction of the applicant's well as provided in W. Va.Code § 22–6–10.

Mr. Hamblet acknowledges that there is no explicit statutory right for a surface owner to appeal the issuance of a well work permit. He argues, however, that the result in *Lovejoy* should be upheld, maintaining that anything else would not satisfy state and federal requirements of due process and equal protection.[8] He contends that under

---

5. *See* note 4, *supra*.

6. A "shallow well" is defined as "any gas well drilled and completed in a formation above the top of the uppermost member of the 'Onondaga Group': Provided, That in drilling a shallow well the operator may penetrate into the 'Onondaga Group' to a reasonable depth, not in excess of twenty feet, in order to allow for logging and completion operations, but in no event may the 'Onondaga Group' formation be otherwise produced, perforated or stimulated in any manner[.]" W. Va.Code § 22–6–1(r) (1994) (Repl. Vol. 2009). W. Va.Code § 22–6–1 was amended in 2011 and the definition of "shallow well" is now found in subsection (t). *See* W. Va.Code § 22–6–1 (2011) (Repl. Vol. 2009 & Supp. 2012). According to the DEP, the EQT well proposed to

drill into "the Onondaga not more than 20', and then plug back approx. 5, 748' and kick off the horizontal leg into the [M]arcellus, using a slick water frac." and thus, is, by statutory definition, a shallow well.

7. It is noted that W. Va.Code § 22–6–17 further provides that the Shallow Gas Well Review Board addresses coal owners' objections to shallow wells. *See also* W. Va.Code §§ 22C–8–1 to –19.

8. Article III, Section 10 of the Constitution of West Virginia guarantees that "[n]o person shall be deprived of life, liberty, or property without due process of law, and the judgment of his peers." This Court has held that, "West Virginia's constitutional equal protection principle is

the safeguards of due process, surface owners are entitled to an appeal that provides meaningful review of a government decision that affects their lands. In support of his argument, Mr. Hamblet relies upon this Court's decision in *Snyder v. Callaghan,* 168 W.Va. 265, 284 S.E.2d 241 (1981). With respect to equal protection, Mr. Hamlet asserts that there is no reasoned justification for providing an appeal procedure for those persons owning coal seams, but not for those who own and often live on the surface of the land.

■ Before addressing Mr. Hamblet's arguments, we note the fact that his assertions are beyond the scope of the certified question presented to this Court. However, "[t]his Court has 'traditionally maintained that upon receiving certified questions, we retain some flexibility in determining how and to what extent they will be answered.'" *Calabrese v. City of Charleston,* 204 W.Va. 650, 655 n. 4, 515 S.E.2d 814, 819 n. 4 (1999) (quoting *City of Fairmont v. Retail, Wholesale, & Department Store Union,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980)). In other words, "we are not limited to the formulation of the issues that was made by the circuit court." *Id.* In this instance, the purpose of the certification was to determine the appeal rights of a surface owner relating to the issuance of a well work permit for a horizontal Marcellus well. It is clear that in order to fully resolve this issue, Mr. Hamblet's constitutional arguments should be addressed.[9]

■ Mr. Hamblet's constitutional arguments are premised upon the notion that surface owners have an unrestricted right to enjoyment in their property. A surface owner's rights, however, are subject to the mineral owner's rights. A mineral owner generally has the right to utilize the surface for "purposes reasonably necessary for the extraction of the minerals." *Buffalo Mining Co. v. Martin,* 165 W.Va. 10, 14, 267 S.E.2d 721, 723 (1980). In other words, " '[t]he owner of the mineral underlying land possesses as incident to this ownership the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate.' *Squires v. Lafferty,* Pt. 1, Syl., 95 W.Va. 307, 121 S.E. 90 [ (1924) ]." Syllabus, *Adkins v. United Fuel Gas Co.,* 134 W.Va. 719, 61 S.E.2d 633 (1950). Here, EQT has a legally binding lease that grants it explicit rights of access to the oil and gas underlying Mr. Hamblet's property. It is this contractual obligation burdening Mr. Hamblet's surface estate that deprives him of an unrestricted right to enjoyment of his property, not the issuance of the well work permit at issue. As such, the constitutional guarantees of due process and equal protection do not apply. Article III, § 10 of the Constitution of West Virginia "protects the individual from deprivations by the State, but not from actions of private persons." *Queen v. West Virginia University Hospitals,* 179 W.Va. 95, 103, 365 S.E.2d 375, 383 (1987).

Contrary to Mr. Hamblet's assertions, this Court's decision in *Snyder, supra,* does not support his argument that he has constitutional right to judicial review of the well work permit granted by the DEP. In *Snyder,* property owners sought a writ of mandamus from this Court seeking to compel the Director of the Department of Natural Resources (hereinafter "DNR") to afford them a hearing regarding the DNR's certification of upstream construction activity which in-

---

a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution." Syllabus Point 4, *Israel, by Israel v. West Virginia Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989). The United States Supreme Court has stated that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 31 (1976).

9. We decline, however, to address the argument advanced by WVSORO that surface owners have a constitutional right to a pre-decisional hearing in addition to the right to appeal the issuance or denial by the DEP of a well work permit for a horizontal Marcellus well. Not only is this issue beyond the scope of the certified question, it was not raised by Mr. Hamblet in the proceedings below. Therefore, it will not be considered. *See King v. Lens Creek Ltd. Partnership,* 199 W.Va. 136, 143, 483 S.E.2d 265, 272 (1996) (declining to expand the certified question to facts not before the Court).

volved the United States Army Corp of Engineers (hereinafter "Corps") filling the river bed of the West Fork River as it constructed the Stonewall Jackson lake and dam. The petitioners argued in *Snyder* that their riparian interests were constitutionally protected property interest within the meaning of Article III, § 10 of the Constitution of West Virginia.[10] They asserted that the approval of the upstream construction entitled them to a hearing in accordance with DNR regulations for the purpose of considering the potential adverse effects of such construction on their lands. This Court found that the property owners were entitled to a hearing, holding in Syllabus Point 1 of *Snyder* that

[w]hen the State authorizes the introduction of foreign material into the flow of a natural watercourse which passes through or past the land of a lower riparian owner, such state action directly affects the interest of the lower riparian owner in the watercourse and constitutes an infringement of a property interest for purposes of article 3, section 10 of the state constitution.

*Snyder* is clearly distinguishable from the case *sub judice.* The Corps had no independent contractual riparian rights with the landowners in *Snyder.* Instead, the State authorized the Corps to alter the river upstream of the landowners thereby affecting the landowners downstream riparian rights. As explained above, in this case, EQT has a contractual right to extract the gas from the subject property. Thus, any infringement upon the property interests of Mr. Hamblet is a result of the manner in which EQT is exercising its contractual rights. The permit issued by the DEP does not authorize EQT to interfere with Mr. Hamblet's property rights; rather, the permit merely allows EQT to exercise its existing rights and controls the manner in which does so. As such, the permitting process arguably encroaches upon EQT's rights,[11] but does not infringe upon Mr. Hamblet's property rights. Thus, there is no merit to Mr. Hamblet's constitutional arguments.

The petitioners point out that Mr. Hamblet is not without a remedy for the damage that occurs to his property. The Oil and Gas Production Damage Compensation Act, W. Va.Code §§ 22–7–1 to–8, affords surface owners the right to receive compensation for property damages related to oil and gas production. In addition, common law remedies are available to Mr. Hamblet to the extent that EQT exceeds its rights as a lessee of the oil and gas. It is also noted that Mr. Hamblet, as the surface owner, was not completely excluded from the permitting process. As discussed above, surface owners receive notice of permit applications and have the right to make comments pursuant to W. Va.Code § 22–6–10. Nonetheless, given the fact that the statutes granting the right of judicial review discussed herein, W. Va.Code § 22–6–40 and –41, were enacted prior to the extensive development of Marcellus shale in this State, this Court urges the Legislature to re-examine this issue and consider whether surface owners should be afforded an administrative appeal under these circumstances.

In summary, an examination of the relevant statutes governing the issuance of well work permits establishes that surface owners have no statutorily defined right to seek judicial review with respect to the issuance of a well work permit by the DEP.[12]

---

10. *See note* 8, *supra.*

11. *See* W. Va.Code § 26–6–6 (1994) (Repl. Vol. 2009) (setting forth the permit requirements). *See also* W. Va.Code § 22–6–21(1994) (Repl. Vol. 2009) (stating that "[n]o oil or gas well shall be drilled nearer than two hundred feet from an existing water well or dwelling without first obtaining the written consent of the owner of such water well or dwelling.").

12. Mr. Hamblet also cited the Administrative Procedures Act, in particular, W. Va.Code § 29A–5–4 (1998) (Repl. Vol. 2012) in his "Petition for Appeal of Issuance of Well Permit." Both W. Va.Code § 22–6–40 and § 22–6–41 indicate that the provisions of W. Va.Code § 29A–5–4 apply and govern the judicial review authorized therein. Pursuant to W. Va.Code § 29A–5–4(a), "[a]ny party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law." A "contested case" is defined by W. Va. Code § 29A–1–2 (1982) (Repl. Vol. 2012), as "a proceeding before an agency in which the legal rights, duties, interests or privileges of specific parties are required by law or constitutional

Given this fact, this Court has no basis to find that Mr. Hamblet has a right to appeal the well work permit issued by the DEP. As we have explained, "'"Where the Legislature has prescribed limitations on the right to appeal, such limitations are exclusive, and cannot be enlarged by the court." *State v. De Spain*, 139 W.Va. 854, [857,] 81 S.E.2d 914, 916 (1954).' Syllabus Point 1, *West Virginia Department of Energy v. Hobet Mining & Construction Co.*, 178 W.Va. 262, 358 S.E.2d 823 (1987)." Syllabus Point 2, *Crea v. Crea*, 222 W.Va. 388, 664 S.E.2d 729 (2008). Accordingly, the answer to the certified question is no.

## IV. CONCLUSION

For the reasons set forth above, the question certified to this Court by the Circuit Court of Doddridge County on August 10, 2011, is answered in the negative.

Certified question answered.

right to be determined after an agency hearing[.]" As discussed above, surface owners are not entitled to any type of hearing regarding a well work permit under any of the relevant statutes discussed above. W. Va.Code §§ 22–6–15; 22–6–16; 22–6–17; 22C–8–7. Therefore, in the absence of a contested case, surface owners do not have a separate right of appeal with respect to the issuance of a well work permit under the Administrative Procedures Act.