No 14-1043 - Underline State ex rel. Rubenstein v. Bloom

**FILED**

March 17, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

WORKMAN, C. J., dissenting:

I dissent to the majority's use of an otherwise moot case to sanction an incorrect interpretation of the circuit court's statutory authority to grant work release to defendants who are convicted felons. In so doing, the majority has exposed the West Virginia Division of Corrections (hereinafter "DOC") to its statutory responsibility for felony defendants with whose care and custody it is statutorily charged, but stripped it of the commensurate ability to supervise and control the defendant by placing them in a third-party workplace setting. Despite the temporary housing of felons in regional jails pending their transport to a state penal facility,[1] the DOC by statute has exclusive supervision and control over inmates placed in its custody, particularly as pertains to their control, custody and employment; accordingly, the majority has expressly sanctioned a wholly illegal order affecting the DOC's statutory duties.

Respondent Tracie Dennis was sentenced to one to ten years in the penitentiary for felony embezzlement. In the sentencing order, however, the circuit court ordered that her sentence be suspended on December 1, 2014, and that she be placed on

---

[1] West Virginia Code § 62-13-5 grants the Commissioner of the DOC "full discretionary authority to contract with any county jail, regional jail or other appropriate facility or institution for the incarceration and care of adult inmates."

1

probation for five years, resulting in a net incarceration of approximately four months. Approximately two weeks later, the circuit court granted Ms. Dennis work release from the South Central Regional Jail. West Virginia Code § 62-11A-1(a) (2008) (Repl. Vol. 2014) permits the circuit court to grant work release "[w]hen a defendant is sentenced or committed for a term of one year or less[.]" The majority has concluded that use of the phrase "or committed" in West Virginia Code § 62-11A-1(a) permits a circuit court to grant work release to defendants if their physical confinement is limited to less than one year, irrespective of their sentence. This construction permits a circuit court to evade the parameters of the statute and grant work release to felony defendants whose sentence does not otherwise qualify by simply suspending the imposition of that portion of the defendant's sentence which exceeds one year. While the circuit court's goals may have been laudable, the manner of achieving them was not legally correct.

This Court has historically held, "Probation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime." Syl. Pt. 2, *State ex rel. Strickland v. Melton,* 152 W. Va. 500, 165 S.E.2d 90 (1968). Upon violation of probation, as set forth in West Virginia Code § 62-12-10, probation may be revoked and the original sentence of confinement imposed. As such, the revocable nature of probation makes it an inappropriate tool for the mischaracterization of a defendant's criminal felony sentence in order to qualify that defendant for the work release privileges available to misdemeanants under West Virginia Code § 62-11A-1.

2

The majority reaches its conclusion under the rubric of "statutory construction," but fails to observe the primary canon of statutory construction: "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature.' Syllabus Point 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953)." *Martin v. Hamblet,* 230 W. Va. 183, 187, 737 S.E.2d 80, 84 (2012).[2] In assessing the work release statute, it is plain that the Legislature intended to extend to the circuit court the authority to grant work release *only* to our lowest category of criminal offenders—misdemeanants—whose sentences to a jail are one year or less. The reasons for this are obvious. Felons are by statute subject to confinement in a state penitentiary for greater than a year and as such, are patently in need of greater evaluation, classification, scrutiny, and controls before being released among the general public during the work day. "That which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed." Syl. Pt. 1,

---

[2] Moreover, "the duty to construe a remedial statute liberally can not amount to authority to a court to a case wholly beyond its effects." *Henthorn v. Collins*, 146 W. Va. 108, 111, 118 S.E.2d 358, 360 (1961). "Although courts should not ordinarily stray beyond the plain language of unambiguous statutes, we recognize the need to depart from the statutory language [where] . . . a literal application would defeat or thwart the statutory purpose[.]" *State ex rel. Frazier v. Meadows*, 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994) (citing *Commissioner v. Brown*, 380 U.S. 563, 571 (1965)); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982)); *see also In re Greg H.*, 208 W. Va. 756, 542 S.E.2d 919 (2000) ("'[I]f [a statutory] definition . . . creates obvious incongruities in the statute, defeats a major purpose of the legislation or is so discordant to common usage as to generate confusion, [the statutory definition] should not be used.'" (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 228–29 (6th ed. 2000)).

3

*Hasson v. City of Chester*, 67 W. Va. 278, 67 S.E. 731 (1910). *See also* Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 533, 336 S.E.2d 171, 180 (1984) (effect should be given to spirit, purpose and intent of lawmakers without limiting interpretation in such manner as to defeat underlying purpose of statute); Syl. Pt. 2, *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W. Va. 519, 138 S.E. 97, 98 (1927) ("a thing within the [legislature's] intention is regarded within statute, though not within the letter [of the statute]").

The DOC is statutorily charged with administering such controls and bears the concomitant responsibility for the consequences resulting from the discharge of its duties. West Virginia Code § 62-13-5 provides: "All adult persons sentenced by a court to serve a sentence of incarceration in a penitentiary, prison or a correctional institution under the jurisdiction of the commissioner of Corrections shall be deemed to be sentenced to the *custody* of the Commissioner of the Division of Corrections." (emphasis added). Further, West Virginia Code § 62-13-2(b) mandates that "[t]he Commissioner of Corrections *shall* administer all other laws affecting the *custody*, treatment and *employment* of persons *sentenced or committed* to institutions under the supervision of the department or affecting the operation and administration of institutions or functions of the department." (emphasis added); *see also* West Virginia Code § 62-13-4: "[T]he commissioner . . . *shall* . . . *[s]upervise* the treatment, *custody* and discipline of all inmates[.]" (emphasis added). Accordingly, irrespective of whether Ms. Dennis is housed

4

temporarily in a regional jail, as a convicted felon she remains in the legal custody of the DOC, which is statutorily required to administer all matters relating to her custody, treatment, and employment, as an inmate. The majority's interpretation of West Virginia Code § 62-11A-1 flies directly in the face of these statutory duties and illegally strips the DOC of its authority and control over such inmates. Where the circuit court usurps this role while requiring the DOC to continue in its role as legal custodian of a defendant, it places the DOC in an untenable position and the public in potential peril.[3]

Furthermore, the fact that the DOC is expressly granted the authority to, and has in fact, established "work and study release units as extensions and subsidiaries of those state institutions" under the DOC's control and authority makes clear that there is a separate work release system for felons than for misdemeanants. W. Va. Code §§ 25-1-1a(a) and 25-1-3(d). The Commissioner of the DOC is authorized to "adopt rules for the government of [such] institutions[.]" W. Va. Code § 25-1-5. This Court has recognized that "[t]he primary responsibility for ensuring the orderly and effective maintenance of our penal system rests with prison administrators. These administrators are the ones responsible for developing and implementing the policies and procedures which are designed to guarantee that the various goals of incarceration are realized." *State ex*

---

3 Moreover, the majority's position that the work release order could have easily been evaded by transferring Ms. Dennis to another facility from which she was not specifically granted work release by the circuit court's order is irresponsible. Our system of justice should not be construed to permit or require such gamesmanship to ensure the orderly administration of inmate incarceration.

5

*rel. Anstey v. Davis,* 203 W.Va. 538, 655, 509 S.E.2d 579, 585 (1998). Unlike the misdemeanor work release statute at issue, the DOC is specifically charged with governance and oversight of felony work release participants pursuant to the rules adopted by the DOC for that purpose. Irrespective of the circuit court's suspension of Ms. Dennis' sentence and placement on probation, Ms. Dennis remains a convicted felon and the public must be afforded the benefit of the DOC's right to evaluate, classify, and develop procedural requirements attendant to that status when she is confined, whether it is at a state penitentiary or a regional jail pursuant to temporary physical housing agreements between the two entities.

Finally, I would be remiss in failing to note that the tentative and cursory analysis of this issue by the majority belies the certainty of its conclusion. Notably, the majority issues no new syllabus point construing the statute at issue; rather, it randomly creates a new point of law regarding the importance of restitution, which has nothing to do with the legal issue before us. Article VIII, section 4 of our State Constitution provides: "[I]t shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case." *See also,* Syl. Pt. 2, *Walker v. Doe,* 210 W. Va. 490, 558 S.E.2d 290 (2001), *modified on other grounds by State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) ("This Court will use signed opinions when new points of law are announced and those points will be articulated

6

through syllabus points as required by our state constitution."). Although all opinions are now signed,[4] the practice of enunciating new points of law in original syllabus points continues. The slender legal reed upon which the majority's resolution hangs, compounded by the fact that this case was mooted by the defendant's intervening release from DOC custody, yields substantial concern about the potential repercussions of this case on other cases. Courts must be wary of creating new points of law based on a singular set of facts, and must be aware of the effect the newly stated law will have a whole panoply of cases wherein the facts may be different.

The Legislature vested the DOC with exclusive authority for the supervision and control of felons sentenced to its custody; any order in derogation of their exclusive control is violative of the DOC's legislative mandate.

Accordingly, I respectfully dissent.

---

[4] *See McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014)

7