446 S.E.2d 714

**STATE of West Virginia ex rel. Richard A. ROBB, Chairman, Kanawha County Republican Executive Committee, Relator,**

v.

**Honorable W. Gaston CAPERTON III, Governor, State of West Virginia, Respondent.**

**No. 22310.**

Supreme Court of Appeals of West Virginia.

Submitted June 28, 1994.

Decided July 8, 1994.

John A.W. Lohmann, Brent Wolfingbarger, Lohmann & Wolfingbarger, Charleston, for relator.

Donald L. Darling, Sr. Deputy Atty. Gen., Charleston, for respondent.

MILLER, Justice:

In this original proceeding for a writ of mandamus, the relator, Richard A. Robb, Chairman of the Kanawha County Republican Executive Committee, seeks to have us compel the respondent, the Honorable W. Gaston Caperton III, Governor of the State of West Virginia, to issue a directive of election under Section 7 of Article VIII of the West Virginia Constitution. The relator states that a vacancy exists in the office of

circuit judge of the Circuit Court of Kanawha County.[1] It is the relator's position that the vacancy should be filled at the next general election, which is scheduled for November 8, 1994. Section 7 of Article VIII authorizes the respondent to fill a vacancy in the office of circuit judge.[2]

The relator also relies on Section 7 of Article IV, which deals generally with the election of officers. In Section 7, there is language regarding the filling of vacancies.[3] In addition, Section 8 of Article IV authorizes the legislature to prescribe the manner in which public officers and agents "shall be elected, appointed and removed."[4]

## I.

■ Initially, we must decide whether the constitutional language in Section 7 of Article VIII, with regard to the filling of a vacancy in the office of circuit judge, controls over the provisions of Sections 7 and 8 of Article IV, relating to the filling of a vacancy in the office of an elected official. We spoke to this point in Syllabus Points 1 and 2 of *Winkler v. State of West Virginia School Building Authority,* 189 W.Va. 748, 434 S.E.2d 420 (1993):

"1. Questions of constitutional construction are in the main governed by the same general rules applied in statutory construction.

"2. 'The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.' Syllabus Point 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984)."

■ *Winkler* involved the validity of school revenue bonds. The contention was made that Section 1 of Article XII of our Constitution authorizing the legislature to "provide, by general law, for a thorough and efficient system of free schools" could override the specific provisions of Section 4 of Article X dealing with limitations on the State's bonded indebtedness. We held that the general provisions as to a thorough and efficient system of free schools could not validate school bonds that violated the State's indebtedness provisions in Section 4 of Article X of our Constitution. Thus, the principle expressed in *Winkler* is that a specific constitutional provision will be given precedence over a general constitutional provision relating to the same subject matter where the two cannot be reconciled.

■ The language of Section 7 of Article VIII in regard to the filling of a vacancy in the office of a circuit judge is quite detailed and considerably more specific than the general language in Sections 7 and 8 of Article IV. For example, the constitutional provision for judges in Section 7 of Article VIII

---

1. The parties agree that a vacancy occurred when the Honorable John Hey, a judge of the circuit court, resigned on April 20, 1994.

2. The pertinent language of Section 7 of Article VIII is:

"If from any cause a vacancy shall occur in the office of a justice of the supreme court of appeals or a judge of a circuit court, the governor shall issue a directive of election to fill such vacancy in the manner prescribed by law for electing a justice or judge of the court in which the vacancy exists, and the justice or judge shall be elected for the unexpired term; and in the meantime, the governor shall fill such vacancy by appointment until a justice or judge shall be elected and qualified. If the unexpired term be less than two years, or such additional period, not exceeding a total of three years, as may be prescribed by law, the governor shall fill such vacancy by appointment for the unexpired term."

3. The applicable language of Section 7 of Article IV is:

"The general elections of state and county officers, and of members of the legislature, shall be held on the Tuesday next after the first Monday in November, until otherwise provided by law.... Elections to fill vacancies, shall be for the unexpired term. When vacancies occur prior to any general election, they shall be filled by appointments, in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the next general election as the person so elected to fill such vacancy shall be qualified."

4. Section 8 of Article IV states: "The legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

makes a specific distinction where the "unexpired term be less than two years, or such additional period, not exceeding a total of three years[.]" In this situation, the governor, if authorized by law, may fill the vacancy for the entire unexpired term. No such language is contained in the general provisions for filling vacancies in Sections 7 and 8 of Article IV. Nor are we able to reconcile the language in these sections with Section 7 of Article VIII. Section 7 of Article IV is keyed to "the next general election"; while, on the other hand, Section 7 of Article VIII addresses with particularity the governor's right to make a temporary appointment for a stated period.

Thus, we hold that Section 7 of Article VIII relating to the manner of filling a vacancy for the office of a justice of the Supreme Court or a judge of a circuit court takes precedence over the more general provisions in Sections 7 and 8 of Article IV relating to the filling of vacancies for state and county officers.

## II.

When we turn to the applicable language in Section 7 of Article VIII, we observe that it contains three specific provisions. First, it vests in the governor the right to "issue a directive of election to fill such vacancy in the manner prescribed by law for electing a justice or judge[.]" Second, it provides that "in the meantime, the governor shall fill such vacancy by appointment until a justice or judge shall be elected and qualified." [5] Third, this section goes on to state that the governor may appoint for the unexpired term

if the "unexpired term be less than two years, or such additional period, not exceeding a total of three years, as may be prescribed by law[.]" In the case at hand, the unexpired term runs until December 31, 2000.

Critical to any analysis for filling a vacancy for a judicial position under Section 7 of Article VIII is the phrase "in the manner prescribed by law[.]" The legislature in W.Va.Code, 3–10–3 (1990), prescribed how a vacancy in the office of a justice of the supreme court of appeals or a judge of a circuit court shall be filled. It provides that "the governor of the state [shall fill the vacancy] by appointment." [6] Where, as here, the unexpired term is longer than two years, "the appointment shall be until a successor to the office has timely filed a certificate of candidacy, has been nominated at the primary election next following such timely filing and has thereafter been elected and qualified to fill the unexpired term." [7]

■ Thus, where there is a vacancy in the office of a supreme court justice or a circuit judge and the unexpired term is for more than two years under W.Va.Code, 3–10–3, the governor may fill the vacancy by appointment. The appointment shall continue until a successor timely files a certificate of candidacy, is nominated at the primary election next following such timely filing, and is thereafter elected and qualified at the next general election.

■ In this case, the vacancy did not occur until April 20, 1994, which was before the May 1994 primary, but after the time for

---

5. For the relevant text of Section 7 of Article VIII, see note 2, *supra.*

6. W.Va.Code, 3–10–3, is not merely applicable to judges, but also is applicable to other state officers, as set out in its first sentence: "Any vacancy occurring in the office of secretary of state, auditor, treasurer, attorney general, commissioner of agriculture, United States senator, judge of the supreme court of appeals, or in any office created or made elective, to be filled by the voters of the entire state, or judge of a circuit court, shall be filled by the governor of the state by appointment."

7. The full text of this portion of W.Va.Code, 3–10–3, is:

"If the unexpired term of a [justice] of the supreme court of appeals, or a judge of the circuit court, be for less than two years, or if the unexpired term of any other office named in this section be for a period of less than two years and six months, the appointment to fill the vacancy shall be for the unexpired term. If the unexpired term of any office be for a longer period than above specified, the appointment shall be until a successor to the office has timely filed a certificate of candidacy, has been nominated at the primary election next following such timely filing and has thereafter been elected and qualified to fill the unexpired term."

filing a certificate of candidacy under W.Va. Code, 3–5–7 (1991). This section requires that a certificate of candidacy must be filed no "later than the first Saturday of February next preceding the primary election day[.]" It is clear that under W.Va.Code, 3–10–3, the governor has the ability to fill a vacancy in the office of a supreme court justice or a circuit judge until a successor has "timely filed a certificate of candidacy, [and] has been nominated at the primary election next following such timely filing[.]"[8] Thus, under these requirements, there was no opportunity for a successor candidate in this case to timely file a certificate of candidacy for the May 1994 primary election.

The next primary election will not occur until May of 1996, and this election will be followed by the November, 1996, general election. Therefore, the governor's appointment to the vacant office of circuit judge will last until a successor timely files a certificate of candidacy; is nominated at the May, 1996, primary election; and is elected and qualified at the November, 1996, general election. The legislature's language is too plain to interpret, as the relator would have us do, that the current vacancy must be filled by the voters at the November, 1994, general election. Here, a vacancy exists and the unexpired term is for more than two years. Under W.Va.Code, 3–10–3, if the vacancy arose prior to the 1994 primary election, such that a timely petition of candidacy could have been filed, then the vacancy could be filled at the November, 1994, general election. However, this vacancy did not occur until after the time passed for filing a certificate of candidacy for the May, 1994, primary election.

### III.

The relator appears to recognize the effect of the language of W.Va.Code, 3–10–3, as he states in his initial brief: "Thus, according to this statute, Respondent's appointee would be able to serve at least until 1996, without obtaining the consent of the people." However, the relator advances two arguments against the validity of W.Va.Code, 3–10–3.

First, he relies on *Miller v. Burley*, 155 W.Va. 681, 187 S.E.2d 803 (1972), which involved a mandamus against the County Commission of Marshall County (Commission). The sheriff of Marshall County was killed in an automobile accident in October, 1970, leaving an unexpired term. The next general election was to occur in November, 1970. The Commission did not act to fill the vacancy until after the November, 1970, general election. This action was challenged by the relator, Brooks Miller, who received the most write-in votes for the office of sheriff at the November, 1970, general election.

This Court determined that under W.Va. Code, 3–10–8 (1963), where a vacancy occurs in the office of sheriff, it is to be filled by appointment by the county commission until the next general election. The section also requires publication of the notice for such election, which had not been done.

The Commission claimed that the failure to publish the notice and the lack of any ability to place space on the ballot for a write-in vote should vitiate the limited number of 557 write-in votes obtained by the relator. We rejected this argument by citing Syllabus Point 3 of *McCoy v. Fisher*, 136 W.Va. 447, 67 S.E.2d 543 (1951), where we held that irregularities in filling vacancies at a general election should not vitiate the election.[9]

We also pointed out in *Miller* that the general constitutional provision for filling office vacancies under Section 7 of Article IV requires that vacancies be filled at the next general election.[10] We do not find *Miller* to be persuasive simply because, as we earlier indicated, the controlling language in this case arises from Section 7 of Article VIII of our Constitution and W.Va.Code, 3–10–3, relating to the appointment of judges.

The second argument raised by the relator is a claim made under *White v. Manchin*, 173

---

8. The relevant text of this provision of W.Va. Code, 3–10–3, is set out in note 7, *supra.*

9. Syllabus Point 3 of *McCoy* states:
   "The failure of the tribunal to give the notice required by statute to be given by it of a general election at which vacancies in elective offices are to be filled does not invalidate a general election which is held at the time and the place fixed by law for the holding of such election."

10. For the relevant text of Section 7 of Article IV, see note 3, *supra.*

W.Va. 526, 543, 318 S.E.2d 470, 488 (1984), where we recognized "that the right to become a candidate for public office is a fundamental right, and that any restriction on the exercise of this right must serve a compelling state interest." (Citations omitted). In *White*, we upheld the one-year residency requirement for state senators contained in Section 12 of Article VI of our Constitution.

We find *White* to be inapplicable in this case because it does not deal with an election to fill a vacancy for an office. The requirement for filling a vacancy for a circuit judge by election is contained in Section 7 of Article VIII, and this requirement was properly followed by the legislature in W.Va.Code, 3–10–3.

Moreover, we are not cited nor are we aware of any federal constitutional attack that has been made successfully on a state's constitutional or legislative enactment for filling vacancies in state offices. The only case that appears to have considered an analogous question is *Valenti v. Rockefeller*, 292 F.Supp. 851 (S.D.N.Y.1968), *aff'd*, 393 U.S. 404–06, 89 S.Ct. 689, 693, 21 L.Ed.2d 635–36 (1969). There, a three-member panel district court was convened to consider whether New York's election law allowing an election to fill the vacancy in the office for United States Senator to be deferred for twenty-nine months violated the Seventeenth Amendment to the United States Constitution. The claim was made that this Amendment, which provides for the popular election of United States Senators, was designed to permit only a temporary appointment to fill the vacancy until the next regular election. The court concluded that this argument could not be supported by the applicable text of the Seventeenth Amendment.[11]

Moreover, the *Valenti* court reviewed the election laws of all fifty states to determine the time periods set for filling a senate vacancy by an election. These were set out in Appendices A and B of its opinion. 292 F.Supp. at 868–75. It concluded that state

legislatures provided a considerable amount of time to have elections for vacancies and that their interpretations of the Seventeenth Amendment should be given considerable judicial deference. The United States Supreme Court unanimously affirmed the judgment without any elaboration. *See* 393 U.S. at 404–06, 89 S.Ct. at 689, 693, 21 L.Ed.2d at 635–36.

In *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982), the Supreme Court recognized the validity of *Valenti, supra:*

"The Court found nothing invidious or arbitrary in this distinction in *Valenti*, nor do we here. As the three-judge District Court observed in *Valenti:*

" 'In this case we are confronted with no fundamental imperfection in the functioning of democracy. No political party or portion of the state's citizens can claim it is permanently disadvantaged ... or that it lacks effective means of securing legislative reform if the statute is regarded as unsatisfactory. We have, rather, only the unusual, temporary, and unfortunate combination of a tragic event and a reasonable statutory scheme.' *Valenti v. Rockefeller*, 292 F.Supp. 851, 867 (SDNY 1968)." 457 U.S. at 11, 102 S.Ct. at 2200, 72 L.Ed.2d at 636.

The issue in *Rodriguez* was the constitutionality of a Puerto Rico statute that provided for an appointment when a vacancy occurred in its legislature. The statute allowed the political party of the member whose seat was vacated to make an appointment by holding an election among its members. This appointment would extend to the next general election. The claim was made that this procedure excluded voters who were not members of the political party from voting and, thereby, denied them equal protection. The court in *Rodriguez* found no constitutional infirmity and made this summary of legal principles: "No provision of the Federal Constitution expressly mandates the pro-

---

11. The portion of the Seventeenth Amendment quoted in *Valenti* is:

" 'When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, that

the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.' " 292 F.Supp. at 853.

cedures that a state or the Commonwealth of Puerto Rico must follow in filling vacancies in its own legislature.... Moreover, we have previously rejected claims that the Constitution compels a fixed method of choosing state or local officers or representatives." 457 U.S. at 8–9, 102 S.Ct. at 2199, 72 L.Ed.2d at 634–35. (Citations and footnotes omitted).

*Valenti* was relied upon in *Wilson v. Oklahoma City Council,* 347 F.Supp. 306 (W.D.Okla.1972), where a challenge was made to a city charter provision that allowed the city council to fill a vacancy on the council until the next municipal election. The court in *Wilson,* 347 F.Supp. at 308, added this additional authority:

"In Reynolds v. Sims, 377 U.S. 533, [583,] 84 S.Ct. 1362, [1393,] 12 L.Ed.2d 506[, 540] (1964) the United States Supreme Court said:

" 'In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation.'

No authority has been presented to the Court or found which declares unconstitutional any state law which directs the filling of a vacancy in public office by appointment rather than by an immediate election. Moreover, historically such appointive procedure in event of vacancies in public office has been universally followed in England and in the States of this country both before and after the adoption of the Fourteenth Amendment to the United States Constitution without Constitutional objection."

The Supreme Court of Minnesota in *Nelson v. Quie,* 299 N.W.2d 119 (1980), issued a brief order confirming the constitutional duty of the governor to appoint a successor to fill a vacancy in the office of a judge that occurred shortly before the general election in 1980. The court quoted Section 8 of Article VI of the Minnesota Constitution which states, in part: " 'The successor shall be elected for a six year term *at the next general election occurring more than one year after the appointment.*' " 299 N.W.2d at 120. (Emphasis added). Based on this language, the court concluded that the person appointed "will serve until a successor is elected and qualified following the general election in 1982." 299 N.W.2d at 120. It also stated without any discussion that it found no merit to the claim that this procedure "would serve to deny respondents of rights secured by the Federal Constitution[.]" 299 N.W.2d at 120.

■ In view of the foregoing, we conclude that Section 7 of Article VIII, along with W.Va.Code, 3–10–3, controls the governor's right to appoint a person to fill a vacancy in the office of supreme court justice or circuit judge. The relator is not entitled to have the office filled at the November, 1994, general election.[12] We, therefore, decline to issue a writ of mandamus.

Writ denied.

12. Although neither party addresses the language in Section 7 of Article VIII, which directs the governor to "issue a directive of election to fill such vacancy," we find there is no particular magic in this phrase. The legislature did not utilize it in W.Va.Code, 3–10–3. We believe that the purpose of such directive is merely to state when an appointment will expire in a document that appoints a person fill a vacancy. In this case, the directive should state that the appointment will expire when a successor timely files a certificate of candidacy, is nominated at the 1996 primary election, and is elected and qualified at the November, 1996, general election.