IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 16-0013

_____

FILED
JANUARY 22, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

State of West Virginia ex rel. BELINDA BIAFORE,
Chair of the West Virginia State Democratic Committee;
and STEPHEN DAVIS, LINDA KLOPP, DAVID THOMPSON,
LINDA PHILLIPS, STEPHEN EVANS, AND PATRICIA BLEVINS,
Members of the West Virginia Democratic Executive
Committee for the Ninth Senatorial District,
Petitioners,

v.

EARL RAY TOMBLIN, Governor of the State of West Virginia;
and BEVERLY R. LUND, JUSTIN M. ARVON, SUE "NAOMI" CLINE,
TONY PAYNTER, JOHN DOE, and JANE DOE, Members
of the West Virginia Republican Executive Committee
for the Ninth Senatorial District,
Respondents,
and
State of West Virginia, by its Attorney General
PATRICK MORRISEY,
Intervenor.

_____

Petition for Writ of Mandamus
WRIT DENIED

_____

Submitted: January 19, 2016
Filed: January 22, 2016

Anthony J. Majestro, Esq.
Powell & Majestro, PLLC,
Charleston, West Virginia
Counsel for Petitioners,
West Virginia
Democratic Executive Committee
for the Ninth Senatorial District

Peter G. Markham, Esq.
General Counsel
Office of Governor Earl Ray Tomblin
Charleston, West Virginia
Counsel for Respondent Governor
Tomblin

Vincent Trivelli, Esq.
The Law Office of Vincent Trivelli,
PLLC
Morgantown, West Virginia
Thomas Patrick Maroney, Esq.
Maroney, Williams, Weaver & Pancake
PLLC
Charleston, West Virginia
Counsel for *Amicus Curiae*, West
Virginia State Building and Construction
Trades Council, AFL-CIO and the
Affiliated Construction Trades
Foundation

J. Mark Adkins, Esq.
Patrick C. Timony, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Beverly R. Lund, Justin M.
Arvon, Sue "Naomi" Cline, and Tony Paynter

Mark A. Carter, Esq.
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for Beverly R. Lund, Justin M.
Arvon, Sue "Naomi" Cline, and Tony Paynter

Patrick Morrisey, Esq.
Attorney General,
Elbert Lin, Esq.
Solicitor General
J. Zak Ritchie, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Intervenor State of West Virginia

John M. Canfield, Esq.
Vice President & Counsel for *Amicus Curiae*,
West Virginia Chamber of Commerce
Charleston, West Virginia

Jeffrey M. Wakefield, Esq.
Wesley P. Page, Esq.
Keith R. Hoover, Esq.
Flaherty Sensabaugh & Bonasso.
Counsel for *Amicus Curiae*, William P. Cole,
III, President of the West Virginia Senate

JUSTICE WORKMAN delivered the OPINION of the Court. CHIEF JUSTICE KETCHUM AND JUSTICE LOUGHRY concur and reserve the right the file concurring opinions. JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion. JUSTICE BENJAMIN, deeming himself disqualified, did not participate in this proceeding.

SYLLABUS BY THE COURT

1. "Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.*, 151 W.Va. 207, 151 S.E.2d 102 (1966).

2. "A writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

3. "In West Virginia a special form of mandamus exists to test the eligibility to office of a candidate in either a primary or general election." Syl. Pt. 5, in part, *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607 (1976).

4. "Because there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case." Syl. Pt. 2, *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979).

i

5. "[W]hen a writ of mandamus has been invoked to preserve the right to vote or to run for political office . . . this Court has eased the requirements for strict compliance for the writ's preconditions, especially those relating to the availability of another remedy." Syl. Pt. 3, in part, *State ex rel. Sowards v. Cty. Comm'n of Lincoln Co.*, 196 W.Va. 739, 474 S.E.2d 919 (1996).

6. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

7. "'When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Syl. Pt. 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967)." Syl. Pt. 3, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

Workman, Justice:

On January 8, 2016, the petitioners, Belinda Biafore, Chair of the West Virginia State Democratic Executive Committee, and the members of the West Virginia Democratic Executive Committee for the Ninth Senatorial District (hereinafter "petitioners"), petitioned this Court, requesting the issuance of a writ of mandamus against the respondents, Governor Earl Ray Tomblin and members of the West Virginia Republican Executive Committee for the Ninth Senatorial District (hereinafter "respondents"). Through this request for extraordinary relief, the petitioners seek to compel Governor Tomblin to fill the current vacancy in the West Virginia Senate from a list of three candidates to be selected by the petitioners.

On January 11, 2016, the respondent, Governor Tomblin, filed a summary response to the petition. The respondent members of the West Virginia Republican Executive Committee for the Ninth Senatorial District filed a response in opposition to the petition on January 12, 2016. West Virginia Attorney General Patrick Morrisey filed an intervenor's brief.

On January 13, 2016, this Court issued a rule to show cause and ordered the respondents to show cause, if any, why a writ of mandamus should not be awarded as

1

requested by the petitioners. Oral argument was conducted on January 19, 2016.[1]

## I. Factual and Procedural History

Daniel Jackson Hall was elected to the West Virginia Senate in the 2012 general election as the Democratic senator in the Ninth Senatorial District. In November 2015, Senator Hall changed parties and became a Republican. On December 29, 2015, Senator Hall announced his resignation from the Senate, effective January 3, 2016, which created the vacancy at the center of this dispute. An immediate discussion ensued regarding whether Governor Tomblin was required to replace Senator Hall with a Democrat or a Republican.

On January 5, 2016, Attorney General Patrick Morrissey issued an opinion of the Attorney General concluding that Governor Tomblin was required to replace Senator Hall with a Republican from one of three names submitted by the respondent members of the West Virginia Republican Executive Committee for the Ninth Senatorial District, pursuant to the provisions of West Virginia Code § 3-10-5 (2013).

In the Petition for Writ of Mandamus currently before this Court, the

---

[1]This Court expresses appreciation for the amicus briefs filed in this matter.

petitioners contend West Virginia Code § 3-10-5 is ambiguous and should be interpreted to preserve the mandate of the voters when a legislative vacancy occurs. Because the voters of the Ninth Senatorial District elected Senator Hall as a Democrat, the petitioners argue the voters' mandate can best be preserved by interpreting the statute to require Governor Tomblin to appoint a Democrat from the three names to be submitted by the petitioners.

## II. Mandamus

This Court has consistently held "[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.*, 151 W.Va. 207, 151 S.E.2d 102 (1966). Generally,

> A writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Cognizant of the need for alacrity in matters affecting the right to political office, this Court has recognized that "[i]n West Virginia a special form of mandamus exists to test the eligibility to office of a candidate in either a primary or general election." Syl. Pt. 5, in part, *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607 (1976). In

special mandamus election cases, "[b]ecause there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case." Syl. Pt. 2, *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979). In that same vein, we have explained that "when a writ of mandamus has been invoked to preserve the right to vote or to run for political office . . . this Court has eased the requirements for strict compliance for the writ's preconditions, especially those relating to the availability of another remedy." Syl. Pt. 3, in part, *State ex rel. Sowards v. Cty. Comm'n of Lincoln Co.*, 196 W.Va. 739, 474 S.E.2d 919 (1996).

Applying these principles to this matter, we view the vacancy created by Senator Hall's departure as properly the subject of a writ of mandamus.

## III. Discussion

The case sub judice requires the application of settled principles of statutory application under which this Court must first determine whether the statutory text is plain and unambiguous. *See U.S. v. Gonzales*, 520 U.S. 1, 4 (1997). We have uniformly adhered to the principle that where a statute is plain and unambiguous, it is the clear and unmistakable duty of the judiciary to merely apply the language. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U. S. 242, 251 (2010); *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970);

4

*Hood v. City of Wheeling*, 85 W.Va. 578, 102 S.E. 259 (1920); *Wellsburg and State Line R. R. Co. v. Panhandle Traction Co.*, 56 W.Va. 18, 48 S.E. 746 (1904).  If the statutory text is clear and unambiguous, we must apply the statute according to its literal terms.  *See, e.g.*, *Dodd v. U.S.*, 545 U.S. 353, 357 (2005).

In *State of West Virginia v. Continental Casualty Co.*, 130 W.Va. 147, 42 S.E.2d 820 (1947), this Court further elucidated this principle:

> When a statute is clear and unambiguous, and the legislative intent is plain, the statute should not be interpreted by the courts. 50 Am.Jur., Statutes, Section 225. *See State ex rel. McLaughlin v. Morris*, 128 W.Va. 456, 37 S.E.2d 85. In such case the duty of the courts is not to construe but to apply the statute. In applying the statute its words should be given their ordinary acceptance and significance and the meaning commonly attributed to them. 50 Am.Jur., Section 225. *See Moran v. Leccony Smokeless Coal Co.*, 122 W.Va. 405, 10 S.E.2d 578, 136 A.L.R. 1007.

130 W.Va. at 155, 42 S.E.2d at 825.   In syllabus point two of *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951), the Court reiterated:  "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  The Court in *Epperly* also observed:  "In such case the duty of the courts is not to construe but to apply the statute, and in so doing, its words should be given their ordinary acceptance and significance and the meaning commonly attributed to them."  *Id.* at 884, 65 S.E.2d at 492.  Courts are obligated to "presume that a legislature says in a statute what it means and means in a statute what it says there."

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992). When the language of a statute is unambiguous, "judicial inquiry is complete." *Rubin v. U.S.*, 449 U. S. 424, 430 (1981).

In view of these axiomatic principles, we emphasize that judicial interpretation of a statute is warranted *only* where the statute is ambiguous. Thus, unless the statute at issue is determined to be ambiguous, this Court is not permitted to engage in an examination of the public policy ramifications potentially resulting from its application or to comment upon the wisdom of the legislation as unambiguously expressed.

Turning to the issue before us, the statutory text frames our analysis. West Virginia Code § 3-10-5 addresses the filling of vacancies such as that created by Senator Hall's departure and provides as follows:

> (a) Any vacancy in the office of State Senator or member of the House of Delegates shall be filled by appointment by the Governor, from a list of three legally qualified persons submitted *by the party executive committee of the party with which the person holding the office immediately preceding the vacancy was affiliated*. The list of qualified persons to fill the vacancy shall be submitted to the Governor within fifteen days after the vacancy occurs and the Governor shall duly make his or her appointment to fill the vacancy from the list of legally qualified persons within five days after the list is received. If the list is not submitted to the Governor within the fifteen-day period, the Governor shall appoint within five days thereafter a legally qualified person *of the same political party as the person vacating the office.*

6

(b) In the case of a member of the House of Delegates, the list shall be submitted by the party executive committee of the delegate district in which the vacating member resided at the time of his or her election or appointment. The appointment to fill a vacancy in the House of Delegates is for the unexpired term.

(c) In the case of a State Senator, the list shall be submitted by the party executive committee of the state senatorial district in which the vacating senator resided at the time of his or her election or appointment. The appointment to fill a vacancy in the State Senate is for the unexpired term, unless section one of this article requires a subsequent election to fill the remainder of the term, which shall follow the procedure set forth in section one of this article.

W. Va. Code § 3-10-5 (emphasis supplied).

In this case, the petitioners, as well as Governor Tomblin and a*micus curiae,* West Virginia ALF/CIO and the West Virginia State Building and Construction Trades Council, essentially argue that the subject statute is susceptible to differing interpretations. Specifically, they contend that the statute is unclear as to whether the party "affiliation" refers to the time of election or the time of vacancy.

To the contrary, the respondents, as well as *amicus curiae*, West Virginia Chamber of Commerce, the Attorney General's Office, and Senate President William Cole, argue that the language of the statute is unmistakably clear and requires the governor to select a replacement from a list submitted by the Republican Party's Ninth Senatorial District

7

Executive Committee.

Upon this Court's review, we find West Virginia Code § 3-10-5 clear and unambiguous. It succinctly states the requirements for filling a vacancy in the West Virginia Legislature. Subsection (a) provides that a vacancy is to be filled through appointment by the governor. The list to be utilized by the governor in selecting the appointee is to be composed of "three legally qualified persons submitted by the party executive committee of the party with which the person holding the office immediately preceding the vacancy was affiliated." W. Va. Code § 3-10-5(a). Subsection (a) also provides that if a list is not submitted within fifteen days, the governor is to appoint, within five days thereafter, "a legally qualified person of the same political party as the person vacating the office." *Id.*

Although subsection (c) provides instruction as to which geographic entity within the party is to submit the list of qualified candidates, that subsection does not affect the question of the party from which the list designated in subsection (a) is to be generated. Subsection (a) clearly provides that the list is to be submitted by the party with which the officeholder was most recently affiliated. *See id.* Thus, this Court finds the statute patently explicit, "admitting of no construction or application other than that which it clearly demands." *Martin v. Ellisor*, 223 S.E.2d 415, 418 (S.C. 1976).

8

We reject petitioners' reasoning because their reading of the statute is profoundly strained and constitutes a misreading of statutory language that is clear in its meaning. They contend that the replacement for a vacating senator should be chosen from the political party with which he or she was affiliated *at the time of election* rather than the party with which he or she was affiliated *immediately preceding the vacancy*. As explained above, this Court is obligated to enforce the statute in accordance with its plain meaning. *State ex. rel. Safe-Guard Products Int'l. v. Thompson*, 235 W.Va. 197, 200, 772 S.E.2d 603, 606 (2015) (holding that clear and unambiguous statute can not be interpreted by courts); *Stanley v. Stanley,* 233 W.Va. 505, 510, 759 S.E.2d 452, 457 (2014) (recognizing that statute is open to construction only where legislation is ambiguous); *Martin v Hamblet*, 230 W.Va. 183, 187, 737 S.E.2d 80, 84 (2012) (finding that clear and unambiguous statutory provision will not be interpreted by courts).

It is undisputed that Senator Hall was affiliated with the Republican Party immediately preceding the vacancy and had been so affiliated since November 2014. The legislature's use of the phrase "immediately preceding the vacancy" is manifestly plain, enunciating a specific and incontrovertible time criterion for the determination of the vacating officeholder's party affiliation.

Dissatisfied with the text of the statute, the petitioners sought to identify and

9

apply an overarching legislative goal that purports to promote the will of the voters. However, any analysis which fails to provide reasonable meaning to the phrase "immediately preceding the vacancy" is wholly improper.[2]  This Court will not alter the text in order to satisfy the policy preferences of the petitioners.  They "should not seek to amend the statute by appeal to the Judicial Branch." *Barnhart v. Sigmon Coal Co, Inc*., 534 U.S. 438, 462 (2002).  "Preserving the separation of powers is one of this Court's most weighty responsibilities." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1954-55 (2015) (Roberts, C.J., dissenting). In performing our constitutional duties, we decline the petitioners' request to encroach upon the power of the Legislature. "Liberty is always at stake when one or more of the branches seeks to transgress the separation of powers." *Clinton v. City of N.Y.*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring).

In advancing their arguments, the petitioners direct this Court's attention to opinions of other jurisdictions that have encountered ambiguous statutes.  Such an approach proves unworkable because those decisions interpreted significantly dissimilar appointment statutes and they all were determined to involve ambiguous statutory language.  In two cases primarily relied upon by the petitioners, *Richards v. Board of County Commissioners of*

---

[2]*See* Syl. Pt. 11, in part*, Brooke B. v. Donald Ray C., II,* 230 W.Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court to arbitrarily read into a statute that which it does not say.").  The petitioners' reading of the statute would render the statute's temporal reference to "immediately preceding the vacancy" superfluous.

*Sweetwater County*, 6 P.3d 1251 (Wyo. 2000), and *Wilson v. Sebelius*, 72 P.3d 553 (Kan. 2003), the statutes at issue were silent as to the time-frame for determining the vacating official's party affiliation. Thus, the statutes were found to be ambiguous subsequent to vacancies occurring in the office after a political party change. The reviewing courts then embarked upon examinations of public policy arguments designed to support the mandate of the voters. While the principles advanced in *Richards* and *Wilson* are arguably laudable, this Court's role is to apply the language of our governing statute. Finding no ambiguity in the West Virginia statute, we are not permitted to engage in an analysis of public policy issues, as addressed in those other jurisdictions. The clear directive of our statute, as addressed above, requires the governor to choose an appointee from a list of candidates submitted by the executive committee of the political party to which the vacating legislator belonged *immediately* prior to vacating the office.

We are also compelled to address issues raised during oral argument of this case regarding the constitutionality of the statute and the United States Supreme Court's decision in *Rodriguez v. Popular Democratic Party,* 457 U.S. 1 (1982).[3] This Court has consistently held that "'[w]hen the constitutionality of a statute is questioned every

---

[3]*Rodriquez* was not significantly addressed in the petitioners' brief; nor was a constitutional argument based on *Rodriguez* advanced in a thorough manner. We address the constitutional issue evaluated in *Rodriguez* based only upon the discussion which ensued during oral argument.

11

reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Syl. Pt. 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967)." Syl. Pt. 3, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

In *Rodriguez*, the United States Supreme Court held that no provision of the federal Constitution expressly mandates any particular procedure to be followed by the states in filling legislative vacancies. 457 U.S. at 8. The appointment statute in *Rodriguez* was found to be constitutional, permitting an interim vacancy to be filled by the political party of the legislator who had vacated the seat. The Supreme Court rejected the appellants' contention that they had a constitutional right to elect the representatives and that the legislative vacancies must be filled by special election. 457 U.S. at 10.

In analyzing the issues raised therein, as well as the underlying statute,[4] the Supreme Court in *Rodriguez* identified several factors which supported the constitutionality of the Puerto Rico statute. For instance, the United States Supreme Court indicated that the Puerto Rico statute did "not restrict access to the electoral process or afford unequal

---

[4]The Puerto Rico statute at issue in *Rodriquez* was interpreted to vest a political party with the power to fill an interim vacancy in the Puerto Rico legislature. 457 U.S. at 14. The *Rodriguez* case did not involve any alteration in political party between the time of election and the time of vacancy.

treatment to different classes of voters or political parties." *Id.* at 10. "All qualified voters have an equal opportunity to select a district representative in the general election; and the interim appointment provision applies uniformly to all legislative vacancies, whenever they arise." *Id.* Additionally, the *Rodriguez* Court explained:

> the . . . choice to fill legislative vacancies by appointment rather than by a full-scale special election may have some effect on the right of its citizens to elect the members of the Puerto Rico Legislature; however, the effect is minimal, and like that in *Valenti*, it does not fall disproportionately on any discrete group of voters, candidates, or political parties.

*Id.* at 12. "Moreover, the interim appointment system plainly serves the legitimate purpose of ensuring that vacancies are filled promptly, without the necessity of the expense and inconvenience of a special election. The Constitution does not preclude this practical and widely accepted means of addressing an infrequent problem." *Id.*

The Supreme Court in *Rodriguez* also explained the nature of the alleged rights of association and equal protection, addressing the appellants' argument that their rights were violated by their exclusion, based on party affiliation, from the election held to select a successor to the legislative office at issue. The Court disagreed, finding both that such argument misconceived the nature of the election and that a statute authorizing a political party to designate an interim replacement did not violate rights of association or equal

protection of the laws. *Id.*[5] The Court further emphasized the substantial deference provided to state legislatures in enacting statutes enunciating the appropriate means of filling vacancies within their legislative bodies.[6]

This Court addressed the *Rodriguez* holding in *State ex rel. Robb v. Caperton*, 191 W. Va. 492, 446 S.E.2d 714 (1994). In that case, Justice Miller delivered the opinion of the Court, and we held that a vacancy in the office of a Supreme Court Justice or circuit judge may be filled by the governor by appointment. This Court noted "we are not cited nor are we aware of any federal constitutional attack that has been made successfully on a state's constitutional or legislative enactment for filling vacancies in state offices." *Id.* at 497, 446 S.E.2d at 719.[7] This Court summarized the *Rodriguez* opinion as follows:

---

[5] *See also Trinsey v. Pennsylvania*, 941 F.2d 224 (3d Cir. 1991), *cert. denied*, 502 U.S. 1014 (upholding Pennsylvania statute that did not require primary election before general election to fill vacancy in United States Senate); *Lynch v. Illinois State Bd. of Elections*, 682 F.2d 93, 97 (7th Cir.1982) (upholding Illinois election law providing for Mayor to fill aldermanic vacancy by appointment).

[6]"The methods by which the people of Puerto Rico and their representatives have chosen to structure the Commonwealth's electoral system are entitled to substantial deference." 457 U.S. at 8.

[7]In *Robb*, this Court also evaluated a New York decision in *Valenti v. Rockefeller*, 292 F.Supp. 851 (S.D.N.Y.1968), *aff'd*, 393 U.S. 404-06 (1969), wherein a "district court was convened to consider whether New York's election law allowing an election to fill the vacancy in the office for United States Senator to be deferred for twenty-nine months violated the Seventeenth Amendment to the United States Constitution." *Robb*, 191 W. Va. at 497, 446 S.E.2d at 719. The issue of the extended time period for filling a position by "temporary" appointment was raised in *Valenti.* The *Valenti* court reasoned as follows:

The claim was made that this [Puerto Rico statute] procedure excluded voters who were not members of the political party from voting and, thereby, denied them equal protection. The court in *Rodriguez* found no constitutional infirmity and made this summary of legal principles: "*No provision of the Federal Constitution expressly mandates the procedures that a state or the Commonwealth of Puerto Rico must follow in filling vacancies in its own legislature. . . .* Moreover, we have previously *rejected claims that the Constitution compels a fixed method of choosing* state or local officers or representatives." 457 U.S. at 8-9, 102 S.Ct. at 2199, 72 L.Ed.2d at 634-35. (Citations and footnotes omitted).

*Robb*, 191 W. Va. at 498, 446 S.E.2d at 720 (emphasis provided). In *Robb*, this Court ultimately upheld the action as required by the constitutional and statutory provisions, finding that "the legislature's language is too plain to interpret" in the manner advanced by the party seeking relief. *Id*. at 496, 446 S.E.2d at 718.[8]

The constitutionality of a political appointment was also challenged in *State ex rel. Herman v. Klopfleisch*, 651 N.E.2d 995 (Ohio 1995). An unsuccessful Democratic

In this case we are confronted with no fundamental imperfection in the functioning of democracy. No political party or portion of the state's citizens can claim it is *permanently disadvantaged . . . or that it lacks effective means of securing legislative reform* if the statute is regarded as unsatisfactory. We have, rather, only the *unusual, temporary, and unfortunate* combination of a tragic event and a reasonable statutory scheme.

*Valenti*, 292 F.Supp. at 851 (emphasis supplied).

[8]In *Robb,* we were requested, through writ of mandamus, to require the filling of the vacancy left by the resignation of the Honorable John Hey in Kanawha County, West Virginia, at the next general election, in 1994, rather than waiting until the 1996 election.

15

candidate challenged the appointment of a Republican officeholder following the resignation of an individual who was elected as a Democrat but then switched to the Republican Party while in office. 651 N.E.2d at 996. The guiding statute was similar to the West Virginia statute, with the exception that it lacked a temporal reference. It provided only that a vacancy was to be filled by the central committee "of the political party with which the last occupant of the office was affiliated." *Id*. at 997. Addressing a constitutional challenge to the appointment of a Republican, the Supreme Court of Ohio cited *Rodriquez* for the proposition that no particular procedure is mandated for the filling of vacancies in a state legislature. The court in *Herman* found the Democratic challenger's constitutional argument unavailing. *Id.* at 999.[9]

Examining the West Virginia statute in light of the principles addressed by the United States Supreme Court in *Rodriguez*, this Court finds no basis upon which to find our statute unconstitutional. To the contrary, the *Rodrigeuz* decision emphasized the considerable latitude enjoyed by each state with respect to procedures for filling vacancies in state government. 457 U.S. at 12. Of note was the observation that the choice of filling vacancies by appointment rather than by special election may affect the rights of the citizens

---

[9]The court in *Herman*, despite its finding that the statute was ambiguous because it did not contain a temporal reference to the time of election or the time of vacancy, found no violation in the seating of a Republican to replace the officeholder who had run as a Democrat and changed to the Republican Party while in office. 651 N.E.2d at 996.

16

to elect its members of the Puerto Rico legislature. *Id*. However, the effect was deemed "minimal" in *Rodriguez* and not to fall disproportionately on any discrete group of voters by applying the statute's provisions. *Id*. Likewise, the West Virginia statute's effect on the rights of the citizens of this state to elect specific members of the West Virginia Legislature is minimal. The effect does not fall disproportionately on a discreet group of voters or political parties and affects both political parties equally, depending in each instance upon the party affiliation of the person creating a vacancy. Equal treatment of voters, based upon an unforeseeable event such as the changing of political parties and a subsequent vacancy, does not constitute a violation of equal protection.

In ruling on this mandamus action, we emphasize that a judicial determination of whether a vacancy statute is ambiguous is *not* a political decision. Although a court might profoundly disagree with a particular statute or may even prefer another outcome, the judiciary is prohibited from substituting its judgment for that of the legislative branch, an action tantamount to improperly assuming the role of legislators.[10] Were this Court to rewrite the clause in an inauspicious attempt to achieve any certain result, we could legitimately be accused of legislating from the bench. Euphemistic reliance on statutory interpretation to

---

[10]In a democratic society, the power to make the law rests with those chosen by the people. The judiciary's role, however, is significantly more confined. We are asked only "to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *see e.g., I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983) (observing that statute's "wisdom is not the concern of the courts.").

obtain a specific result would frustrate the tripartite principles of government upon which this state was founded and still firmly rests.

Resolution of this dispute is purely a matter of statutory application, be it a Democrat transforming into a Republican, or a Republican becoming a Democrat. The statute applies with equal force to each situation and must be interpreted in precisely the same fashion regardless of the underlying party disloyalty demonstrated by the changeling. In the final analysis, we affirm the primacy of the Legislature's power to enact statutes and this Court's constitutional mandate to apply the laws as written. Our decision is grounded in law, not in ideology or politics.

## IV. Conclusion

Based upon the foregoing, this Court finds no ambiguity in West Virginia Code § 3-10-5. Accordingly, we deny the requested writ of mandamus seeking to direct the Governor to fill the current vacancy in the West Virginia Senate from a list of three candidates to be selected by the petitioners. The vacancy is to be filled according to the explicit provisions of the statute, from a list of three candidates to be selected by the respondent West Virginia Republican Executive Committee for the Ninth Senatorial District, based upon Senator Hall's most recent affiliation with the Republican Party.

18

The Clerk is ordered to issue the mandate in this case forthwith.

Writ denied.