## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Respondent**

**vs)  No. 16-0396** (Berkeley County 14-F-29)

**Weatherholtz Bail Bonding,**
**Petitioner**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and defendant below Weatherholtz Bail Bonding, by counsel Paul G. Taylor, appeals the March 25, 2016, "Order Denying Weatherholtz Motions to Amend Final Order and to Re-Open Evidence" that was entered in the Circuit Court of Berkeley County following entry of the court's prior "Order Denying Weatherholtz Bail Bonding's Motion to Return and Remit Forfeited Bond." The State of West Virginia, by counsel Benjamin M. Hiller, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Roger C. Doleman (hereinafter "defendant") was indicted in February of 2014 on a variety of charges including first degree robbery, conspiracy to commit robbery, assault during the commission of a felony, petit larceny, obstruction, and fleeing from law enforcement by means other than a use of a vehicle. Petitioner, a professional bonding company, posted defendant's bond, which was set at $50,000. Following a continuance, trial was set for June 24, 2015.

In the interim, in May of 2014, another criminal complaint was filed against defendant for driving while revoked for driving under the influence and fleeing the scene of an accident with injury. A warrant for defendant's arrest was issued on June 6, 2014. The State thereafter moved to revoke defendant's bail. The circuit court granted the State's motion to revoke bail on the ground that defendant violated the terms and conditions of his criminal bail agreement and issued a capias for his arrest. A copy of the circuit court's order was forwarded to petitioner.

Defendant failed to appear for trial on June 24, 2014. The court entered a second order revoking defendant's bond and issued another capias.

On July 2, 2014, the State filed a motion for forfeiture of bond and to show cause why a

1

default should not be entered against petitioner. The circuit court entered an order forfeiting bond and a show cause hearing was held on July 14, 2014, where it was determined that petitioner failed to show cause why default on the forfeited bond should not be ordered. However, the court stayed its ruling, granted petitioner thirty days to apprehend defendant, and further ordered that, if defendant was not located within thirty days, counsel for petitioner "has leave to seek an additional extension of time by filing a motion with the Court and providing a detailed explanation of efforts made by [petitioner] to locate and detain [d]efendant . . . ."

On September 29, 2014, the circuit court entered an order of default on the forfeited bond, ruling that "[m]ore than sixty days have since passed and the Defendant has not been returned to the jurisdiction of this Court, nor has [petitioner] moved to extend the time." Furthermore, the State represents, and petitioner does not dispute, that petitioner failed to provide the court with detailed information regarding its efforts to apprehend defendant up to that point. The court ordered that petitioner immediately remit the forfeited bond amount of $50,000 to the clerk of the court.

On October 2, 2014, petitioner filed a motion to alter, amend, and vacate the court's September 29, 2014, order in which it stated that it "has been diligently attempting to locate [defendant] without success[;]" that it "was and is in a position to detail its efforts for the Court[;]" that it "has filed suit on its surety agreement with defendant and his family/friends in an effort to apply pressure which, hopefully, will force [defendant] to surface[;]" and that it "inadvertently failed to timely seek leave of court for a stay on forfeiting [defendant's] bond and an extension of time to locate [defendant]." The State opposed petitioner's' motion.

By order entered October 10, 2014, the circuit court denied the motion to alter, amend, and vacate its prior order, finding that "[m]ore than one hundred days have passed since the Defendant absconded from his bail on serious felony charges and crimes of personal violence," and that there exists "no good cause to vacate its prior order."

In December of 2014, defendant was arrested in the State of Maryland by Maryland authorities on Maryland charges. In April of 2015, after defendant was convicted and sentenced for the Maryland crimes, he was transferred to West Virginia through the interstate agreement on detainers process.

On September 8, 2015, the State filed a motion for contempt against petitioner on the ground that petitioner had failed to remit the forfeited bond to the clerk, as previously ordered. A show cause hearing was scheduled for October 5, 2016. On September 28, 2015, petitioner filed an objection to the State's motion for contempt, claiming that it never received a copy of the October 10, 2014, order denying its motion to alter, amend, and vacate the default order and also recounting, in an attached exhibit, its "extensive efforts to apprehend [defendant]."[1]

---

[1] The copy of petitioner's "Exhibit A" included in the appendix record on appeal, which was attached to petitioner's objection to the State's motion for contempt, appears to be only a partial copy. It is also unsigned and unsworn. It is unclear who authored the exhibit.

2

By order entered October 19, 2015, following the October 5, 2015, hearing, the parties entered into an agreed order in which petitioner was to remit the previously forfeited bond of $50,000 no later than October 19, 2015. Also on that date, the circuit court entered a separate order granting petitioner's request for a thirty-day leave to file a motion for return of the forfeited bond, to which the State did not object.

On October 30, 2015, petitioner filed a motion to return and remit forfeited bond. In its subsequently filed memorandum in support of the motion, petitioner again recounted its extensive efforts to apprehend defendant. The State filed a response.[2]

On January 4, 2016, the circuit court held a hearing on petitioner's motion. Tommy Weatherholtz, petitioner's principal, was present at the hearing but was not called to testify. Petitioner called defendant as its only witness. The essence of defendant's testimony was that he saw Mr. Weatherholtz on numerous occasions while he was on the run and that he moved from place to place in order to avoid being apprehended by petitioner. According to petitioner, defendant's testimony corroborated its claim that it expended much effort in its attempt to find and apprehend defendant in order to return him to the custody of the circuit court. By order entered February 16, 2016, the court denied petitioner's motion.

Petitioner thereafter filed a motion to re-open evidence so as to address the finding in the February 16, 2016, order that petitioner failed to present evidence of its efforts to apprehend defendant. Petitioner contemporaneously filed a motion to alter or amend the February 16, 2016, order under West Virginia Rule of Civil Procedure 59(e), or, in the alternative, a motion for relief from that order under Rule 60. The circuit court denied petitioner's motions by order entered March 25, 2016. This appeal followed.

In its first assignment of error, petitioner argues that the circuit court erred in failing to remit all or any portion of the forfeited bond. This Court has previously held that "[a] trial court's decision on whether to remit, under Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, a previously forfeited bail bond will be reviewed by this Court under an abuse of discretion standard." Syl. Pt. 1, *State v. Hedrick*, 204 W. Va. 547, 514 S.E.2d 397 (1999). Furthermore, it is petitioner, as the surety, who bears the burden of establishing such an abuse of discretion. *Id.*, at 548, 514 S.E.2d at 398, at syl. pt. 2 (holding that "[t]he surety bears the burden of establishing that the trial court abused its discretion in refusing to remit, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, all or part of a previously forfeited bail bond.").

In syllabus point three of *Hedrick*, we established some relevant criteria that circuit courts must consider when contemplating whether to remit forfeited bail:

> When a trial court is asked to remit all or part of a previously forfeited bail bond, pursuant to Rule 46(e)(4) of the West Virginia Rules of Criminal Procedure, the court shall consider the following criteria to the extent that they

---

[2] Meanwhile, defendant pleaded guilty to first degree robbery, assault during the commission of a felony, and felony failure to appear, and was sentenced thereon.

are relevant to the particular case under consideration: (1) the willfulness of the defendant's breach of the bond's conditions; (2) the cost, inconvenience and prejudice suffered by the government as a result of the breach; (3) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his or her disappearance; (4) the appropriateness of the amount of the bond; (5) the participation of the bondsman in rearresting the defendant; (6) whether the surety is a professional or a friend or member of the defendant's family; (7) the public interest and necessity of effectuating the appearance of the defendant; and (8) any explanation or mitigating factors presented by the defendant. These factors are intended as a guide and do not represent an exhaustive list of all of the factors that may be relevant in a particular case. All of the factors need not be resolved in the State's favor for the trial court to deny remission in full or in part. Moreover, it is for the trial court to determine the weight to be given to each of these various factors.

204 W.Va. at 548-49, 514 S.E.2d at 398-99, syl. pt. 3.

On appeal, petitioner argues that the circuit court failed to weigh the *Hedrick* factors in an appropriate manner and, thus, abused its discretion in concluding that the forfeited bond should not be remitted. Petitioner argues that it was defendant and not petitioner who intentionally failed to appear at trial; that the State failed to present any evidence that it sustained a pecuniary loss in connection with defendant's disappearance and the State's efforts to find him; that the State was not prejudiced because its witnesses were ready to testify at trial; and that defendant was returned to West Virginia within the two-year time period required by West Virginia Code § 62-1C-12(b) (providing, in part, that a "bail bondsman shall be reimbursed the full amount of the bond forfeiture . . . if the bail bondsman returns the defendant . . . within two years of the forfeiture of the bond."). Petitioner argues further that it expended enormous efforts in capturing defendant even though it did not physically apprehend him. Petitioner contends that it was not personally notified that defendant failed to appear, giving defendant a one-month "head start to avoid apprehension[;]" and that, once notified, petitioner searched and surveilled the homes of defendant's relatives in West Virginia and Pennsylvania, as well as the home and vehicle of defendant's girlfriend in Delaware. Although none of these efforts produced defendant, petitioner represents that it "developed" an address in Hagerstown, Maryland for defendant's whereabouts that it gave to United States Marshals, and that the Hagerstown Police Department apprehended defendant at that address in December of 2014. According to petitioner, this proves that it was directly responsible for defendant's capture. Finally, petitioner argues, the circuit court should have considered an additional factor—that petitioner, as a professional bonding company, provides an important public function and, in addition to the expenses it incurred in searching for defendant, the refusal to remit the forfeited bond will have a deleterious impact on its business.[3]

Based upon our review of the record on appeal and the arguments of counsel, we find no

---

[3] As for the factor regarding the appropriateness of the bond amount, the parties stipulated that the $50,000 bond amount was reasonable and appropriate.

4

error and conclude that the circuit court did not abuse its discretion in the manner in which it considered the factors in *Hedrick* and in refusing to remit the forfeited bond. First, defendant's bond violation was substantial and intentional given that he purposefully did not appear for trial to avoid prosecution and remained at large for more than a year. Second, the cost, inconvenience, and prejudice the State suffered as a result of the breach consisted of a fourteen month delay, disruption and delay of the circuit court's docket, the fact that the case occupied the prosecutor's office for a longer period than would otherwise be necessary, and the expenditure of considerable court resources. Third, there was a lengthy delay caused by defendant's failure to appear, which occurred on the eve of trial. Furthermore, although petitioner recounted his efforts to apprehend defendant and claims that it was directly responsible for defendant's ultimate capture by Maryland authorities, such efforts are but one factor to be considered. As this Court has stated, "such efforts alone are insufficient to justify full remission." *Hedrick*, 204 W. Va. at 557, 514 S.E.2d at 407. This Court has further advised that the purpose of bond is to assure a defendant's appearance in court and, when a surety fails in its duty to insure that the defendant appears for trial, the bond is necessarily forfeited. *Id.* at 558, 214 S.E.2d at 408. Petitioner's unsuccessful efforts to apprehend defendant do not satisfy its obligation such that petitioner "should be entitled to full remission of the forfeited bond. To find otherwise would be to diminish the duty of a bonding company or other surety to act diligently to assure that its bailees conform to the conditions of their bonds in order to avoid forfeiture." *Id.*

Furthermore, petitioner is a professional bonding company, with experience and knowledge of its rights and duties, *see id.*; as such, it assumes the financial risk of securing the presence of criminal defendants for trial. Petitioner knew, or should have known, that defendant's disappearance on the eve of trial and for such a long period, would result in petitioner being liable for the bond posted. Moreover, given the violent nature of defendant's crimes, the public had a real and significant interest in justice being served in a timely manner. Finally, petitioner's claim that it will suffer financial hardship if the bond is not remitted ignores the risk associated with its professional services, for which it is paid to assure that criminal defendants appear for trial. Based upon the foregoing, we conclude that petitioner failed to satisfy its burden of establishing that the circuit court abused its discretion in refusing to remit the forfeited bond.

We next address petitioner's second, fourth, and fifth assignments of error, as they are interrelated. Petitioner argues that the circuit court erred in requiring petitioner to "verify" the efforts it took to apprehend defendant because verification of such efforts is not a requirement for remission of bond under *Hedrick* or otherwise. Petitioner argues further that its constitutional right to access the courts[4] was violated when the circuit court noticed the January 4, 2016, hearing as an "argument" hearing but proceeded to take evidence without giving notice to petitioner. Finally, petitioner argues that the circuit court abused its discretion in refusing petitioner's subsequent request to demonstrate its efforts to apprehend defendant.

Based upon our review, we find petitioner's arguments to be without merit. First, notwithstanding petitioner's argument to the contrary, the circuit court did not refuse to remit the forfeited bond solely based upon petitioner's failure to verify its efforts to apprehend defendant.

---

[4] *See* W.Va. Const. Art. III, § 17.

As set forth in detail in its January 16, 2016, order, the circuit court considered all of the relevant *Hedrick* factors and determined that remission of the forfeited bond was not warranted. As previously discussed herein, whether petitioner participated in defendant's rearrest was but one factor. We note, however, that petitioner attempted to recount its efforts to apprehend defendant in pleadings filed below. "It is black letter law that '[s]tatements made by lawyers do not constitute evidence in a case.' *West Virginia Fire & Cas. Co. v. Mathews,* 209 W.Va. 107, 112 n. 5, 543 S.E.2d 664, 669 n. 5 (2000)." *Barbina v. Curry*, 221 W. Va. 41, 48, 650 S.E.2d 140, 147 (2007). *See also Crum v. Ward,* 146 W.Va. 421, 457, 122 S.E.2d 18, 38 (1961) (Haymond, President, dissenting) (stating that "[e]very trial judge knows, as every trial lawyer knows, and every appellate court judge should know, that the statements of counsel in an argument are not evidence . . . ."). Thus, to the extent the circuit court deemed petitioner's representations in this regard to be inadequate evidence of one of the *Hedrick* factors, we find that the court did not abuse its discretion.

With regard to the nature of the January 4, 2016, hearing, the transcript reveals that it was petitioner's counsel who sought to introduce evidence at the hearing. Petitioner's counsel proceeded to question defendant in an effort to "corroborate" petitioner's unsubstantiated claims regarding its efforts to apprehend defendant. Although petitioner's principal, Tommy Weatherholtz, was also present at the hearing, counsel elected not to elicit sworn testimony from him in this regard. Given these facts, we conclude that petitioner was not denied an opportunity to be heard or otherwise denied access to the courts. As for petitioner's claim that his subsequently filed motion to reopen the evidence was improperly denied, we likewise find no error. Petitioner was afforded more than ample time and opportunity to properly present evidence of its efforts to apprehend defendant, but failed to do so.

Finally, petitioner assigns as error the circuit court's narrow construction of West Virginia Code § 62-1C-12(b), which provides:

> Notwithstanding any provision of this code to the contrary, when a bail bondsman, as defined in article ten [§§ 51-10-1 et seq.], chapter fifty-one of this code, has a surety bond forfeited because of the failure of a defendant to appear before a court or magistrate, *that bail bondsman shall be reimbursed the full amount of the bond forfeiture*, be it cash or surety, *if the bail bondsman returns the defendant to the custody of the court or magistrate, within two years of the forfeiture of the bond.*

(Emphasis added).

Petitioner argues that defendant was returned to the custody of the circuit court within two years of the forfeiture of the bond. According to petitioner, even though it did not personally deliver defendant, his capture was primarily due to petitioner's efforts. Thus, petitioner argues, the spirit and intent of West Virginia Code § 62-1C-12(b) dictate that petitioner receive the full amount of the forfeited bond and to conclude otherwise is manifestly unfair.

This issue is one of statutory construction. "'Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415

(1995)." Syl. Pt. 1, *Frantz v. Palmer*, 211 W. Va. 188, 564 S.E.2d 398 (2001).

Upon our de novo review, we conclude that the circuit court did not err in construing West Virginia Code § 62-1C-12(b) in such a way that petitioner was not entitled to reimbursement of the forfeited bond. "'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 6, *State ex rel. Biafore v. Tomblin*, 236 W. Va. 528, 782 S.E.2d 223 (2016). The clear and unambiguous language of West Virginia Code § 62-1C-12(b) provides for reimbursement "*if the bail bondsman returns the defendant to the custody of the court . . .* within two years of the forfeiture of the bond." (Emphasis added). It is undisputed that defendant was arrested in Maryland by Maryland authorities on Maryland charges. Defendant was thereafter transferred to West Virginia through the interstate agreement on detainers process. West Virginia Code § 62-1C-12(b) clearly required petitioner to return defendant to the custody of the circuit court as a condition precedent to reimbursement of the forfeited bond. Petitioner failed to satisfy this statutory requirement. Thus, it was not error for the circuit court to conclude that petitioner was not entitled to reimbursement of the forfeited bond under the statute.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 19, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7